## LAWRENCE OWENS v. STATE.

### No. A-622.  Opinion Filed June 20, 1911.

### (116 Pac. 345.)

1. **PARENT AND CHILD—Duties of Parent—Medical Assistance for Child—"Support."** (a) Under the statutes of this state, it is the duty of a parent having custody of a minor child to support and educate such child; and such "support" includes medical attendance necessary to preserve the health and life of such child.

   (b) A reasonable construction of the statutes would require the furnishing of medical treatment in such a manner and on such occasions as an ordinarily prudent person, solicitous for the welfare of his child and anxious to promote his recovery, would provide.

2. **SAME—Failure to Furnish—Defenses—Religious Belief.** In a prosecution for a violation of that section of the statutes (Comp. Laws 1909, sec. 2369) which provides, "Every parent of any child who willfully omits, without lawful excuse, to perform any duty

imposed upon him by law to furnish necessary food, clothing, shelter, or medical attendance, for such child, is guilty of a misdemeanor,'' an instruction of the trial court that religious belief would not constitute a defense to such prosecution is correctly given.

3. **PARENT AND CHILD—Medical Aid to Child—Question for Jury.**
The question of the necessity for medical treatment is a question of fact for the jury in any case for a violation of the statute, supra, and when submitted under proper instruction of the court a finding of the jury, contrary to the contentions of an accused, will not be disturbed on appeal, when the evidence tends reasonably to support the finding.

(Syllabus by the Court.)

*Appeal from Beaver County Court; R. A. Dickson, Judge.*

Lawrence Owens was convicted of a misdemeanor, and he appeals. Affirmed.

*J. W. Culwell,* for plaintiff in error.

*Smith C. Matson,* Asst. Atty, Gen., for the State.

ARMSTRONG, J.    An information was filed in the county court of Beaver county in July, 1909, charging plaintiff in error with wilfully omitting, without lawful excuse, to furnish medical attendance to his minor child, Cora Owens.

It appears that this child was afflicted with typhoid fever during part of November and December, 1908; that the county health officer and other physicians and neighbors of the accused called upon and endeavored to induce him to permit the child to be attended by physicians and nurses. He refused to do so, even though the medical attendance was offered without expense.

In the testimony of the accused, he admits that he was acquainted with the serious nature of typhoid fever, and knew his child was seriously ill, and offered no excuse for his conduct. The testimony on behalf of the state, and by the mother of the child, who testified on behalf of the accused, discloses that the reason for refusing to provide medical attendance was on account of religious belief. On the presentation of the case in this court, that is the only question that is argued, and the only one we shall consider.

This prosecution is based on section 2369, Snyder's Statutes, which is as follows:

"Every parent of any child who wilfully omits, without lawful excuse to perform any duty imposed upon him by law to furnish necessary food, clothing, shelter, or medical attendance for such child is guilty of a misdemeanor."

Section 4898, Snyder's Statutes, makes it the duty of the parent who is intrusted with the custody of the child to give such child support and education. Section 4899, *Id.*, provides, that the father of a legitimate unmarried minor is entitled to the custody of such child. The word "support," as used in the statute, includes necessary medical attendance, as much so as necessary food and clothing. See *Morse v. Powers*, 45 Vt. 300, wherein the court says:

"The plaintiff agreed that the son should have 'support for himself and family from the business,' and he was in the habit of appropriating goods for that purpose. Proper medical treatment to the sick is deemed by usage as necessary as the provision of bread to the hungry."

The trial court instructed the jury that religious belief would not constitute a defense to a prosecution under this statute. It is argued by counsel for the accused that this instruction by the court was an unwarranted invasion upon its part of the province of the jury. He says: "The defenses in this case are upon religious belief and upon the necessity of furnishing to this child in its condition medical attendance. As to whether or not his religious belief was or is a lawful excuse should have been left to the jury. * * *"

We cannot agree with this contention. Under the statutes, *supra,* it is the duty of the parent, regardless of his religious belief or superstition, to furnish necessary food, clothing, shelter, and medical attendance to his child. A reasonable construction of these statutes would be that the parent is required to furnish the necessary food, clothing, shelter, and medical attendance looking to the preservation of the health, as well as the life, of the child. The law does not contemplate the calling of a physician or the furnishing of medical attendance for every trivial com-

plaint with which a child may be afflicted. A reasonable amount of discretion is vested in the parents charged with the duty of maintaining and bringing up infant children. We think that the correct rule would require the furnishing of medical treatment in such a manner and on such occasions as an ordinary prudent person, solicitous for the welfare of his child and anxious to promote its recovery, would provide.

A leading case dealing with this particular question is *People v. Pierson*, 176 N. Y. 201, 68 N. E. 243, 63 L. R. A. 187, 98 Am. St. Rep. 666. In that case the identical question was raised that is raised here. The statutes are identical. The court in part says:

"Section 288 of the Penal Code, so far as is material upon the question under consideration, provides as follows: 'A person who (1) wilfully omits, without lawful excuse, to perform a duty, by law imposed upon him, to furnish food, clothing, shelter, or medical attendance to a minor * * * or (4) neglects, refuses, or omits to comply with any provisions of this section * * * is guilty of a misdemeanor.' It would seem that the legislative intent in adopting this provision of the Code is reasonably clear, although possibly more precise language could have been employed. It contemplates that there are persons upon whom the law casts a duty of caring for minors, but it does not specify the persons. They are, however, those upon whom the duty is 'by law imposed.' They are designated in the statutes and in the common law as the parents, guardians, or those who, by adoption or otherwise, have assumed the relation in *loco parentis*. The duty of such a person is specified by the provisions of the section. It is 'to furnish food, clothing, shelter, or medical attendance.' Giving the statute a reasonable construction, by applying the rule of necessity, it is apparent that it means the necessary food, clothing, shelter, or medical attendance required for the preservation of the health and life of the child. We quite agree that the Code does not contemplate the necessity of calling a physician for every trifling complaint with which the child may be afflicted, which in most instances may be overcome by the ordinary household nursing by members of the family; that a reasonable amount of discretion is vested in parents charged with the duty of maintaining and bringing up infant children; and that the standard is, At what time would an or-

dinarily prudent person, solicitous for the welfare of his child and anxious to promote its recovery, deem it necessary to call in the services of a physician? * * * It is now contended that section 288 of the Penal Code does not, in terms or in effect, make it the duty of any one to furnish medical attendance to a minor child, and that under the common law it is not part of the duty of parents to provide medical attendance for their children. We have already considered, in part, the provisions of the section, and have indicated our conclusion that the clause 'a duty by law imposed,' as found in this section, had reference to the person upon whom the law imposed the duty of caring for minors, leaving it to the provisions of the section to particularize as to the character of those duties. In other words, that the section properly construed means that a person upon whom the law has imposed the duty to care for a minor, who wilfully omits, without lawful excuse, to furnish such minor with necessary food, clothing, shelter, or medical attendance, is guilty of a misdemeanor. Under this construction of the statute, the duty of parents to furnish medical attendance for their children is expressly provided for, and is made obligatory upon them, even if they were exempt from such duty under the common law."

Continuing, the court says:

"The remaining question which we deem it necessary to consider is the claim that the provisions of the Code are violative of Const. art. 1, § 3, which provides that 'the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace and safety of this state.' The peace and safety of the state involve the protection of the lives and health of its children, as well as the obedience to its laws. Full and free enjoyment of religious profession and worship is guaranteed, but acts which are not worship are not. A person cannot, under the guise of religious belief, practice polygamy, and still be protected from the statutes constituting the crime of bigamy. He cannot, under the belief or profession of belief that he should be relieved from the care of children, be excused from punishment for slaying those who have been born to him. Children, when born into the world, are utterly helpless, having neither

the power to care for, protect, or maintain themselves. They are exposed to all the ills to which flesh is heir, and require careful nursing, and, at times when danger is present, the help of an experienced physician. But the law of nature, as well as the common law, devolves upon the parents the duty of caring for their young in sickness and in health, and of doing whatever may be necessary for their care, maintenance, and preservation, including medical attendance, if necessary; and an omission to do this is a public wrong, which the state, under its police powers, may prevent. The Legislature is the sovereign power of the state. It may enact laws for the maintenance of order by prescribing a punishment for those who transgress."

The proposition that religious belief constitutes no defense for violation of a penal statute has been repeatedly announced by the courts in construing various other statutes, principally the violation of statutes on Sabbath breaking. The reasons given in those cases support the position of the court in this case. If religious belief would be a defense to the violation of the statute, *supra,* it would necessarily follow that it would be a defense to the violation of the statutes against Sabbath breaking, and the statutes against polygamous marriages, and various other wholesome penal laws.

The Supreme Court of Arkansas, in an opinion by Chief Justice Cockrill, discusses the proposition of religious belief as a defense to the violation of the provisions of the Sunday law, in the case of *Scales v. State,* 47 Ark. 476, 1 S. W. 769, 58 Am. Rep. 768. We quote the following extract from the opinion in that case:

"The proof showed that the appellant was found painting a church on Sunday. He offered to prove that he was a member of a religious society known as the Seventh Day Baptists, one of the tenets of which is the observance of Saturday as the Sabbath, instead of Sunday, and that he had regularly refrained from all secular work and labor on Saturday agreeably to his religious faith and that of his church. * * * It is said that every day in the week is observed by some one of the religious sects of the world as a day of rest, and, if the power is denied to fix by law Sunday as such a day, the same reason would prevent the selection of any day; but the power of the Legislature to select a day as a holiday is every where conceded. This state,

from the beginning has appropriated Sunday as such. On that day the business of our courts and public offices has always been suspended; the issuance and service of legal process prohibited; presentment and notice of dishonor of commercial paper not allowed; and the performance of an act in execution of a contract which matures on Sunday postponed to the next day. This observance of Sunday as a day of refrainment from secular business has always been required of the people generally, without reference to creed, and they continue to so observe it, without complaint that, as a municipal institution, it violates any of their constitutional or religious rights. The principle which upholds these regulations underlies the right of the state to prescribe a penalty for the violation of the Sunday law. The law which imposes the penalty operates upon all alike, and interferes with no man's religious belief, for in limiting the prohibition to secular pursuits it leaves religious profession and worship free. * * * The appellant's argument, then, is reduced to this: That, because he conscientiously believes that he is permitted by the law of God to labor on Sunday, he may violate with impunity a statute declaring it illegal to do so. But a man's religious belief cannot be accepted as a justification for his committing an overt act, made criminal by the law of the land."

The Supreme Court of Pennsylvania, in the case of *Commonwealth v. Herr et al.,* reported in 229 Pa. 132, 78 Atl. 68, discusses a statute involving this principle. The argument used on behalf of the accused in that case is the same as that urged by counsel in the case at bar, and the reasoning and conclusion of the court sustain our position that the statute is directed against the acts, and not beliefs, of the citizen; that the statute is valid; and that a violation thereof cannot be justified by the contention that it interferes with the religious belief of the citizen.

The doctrine is laid down by the United States Supreme Court, in the case of *Reynolds v. United States,* 98 U. S. 145, 25 L. Ed. 244. In that case the question involved was a polygamous marriage consummated in Utah Territory, between two persons commonly known as Mormons, who had been previously married. The rule is laid down in the following language:

"A party's religious belief cannot be accepted as a justifica-

tion for his committing an overt act, made criminal by the law of the land."

The opinion is quite lengthy and covers a number of other questions. We quote the following as bearing upon the question under consideration:

"In our opinion, the statute immediately under consideration is within the legislative power of Congress. It is constitutional and valid as prescribing a rule of action for all those residing in the territories, and in places over which the United States have exclusive control. This being so, the only question which remains is whether those who make polygamy a part of their religion are excepted from the operation of the statute. If they are, then those who do not make polygamy a part of their religious belief may be found guilty and punished, while those who do must be acquitted and go free. This would be introducing a new element into criminal law. Laws are made for the government of actions, and, while they cannot interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a necessary part of a religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice? Or, if a wife religiously believed it was her duty to burn herself upon the funeral pile of her dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice? So here, as a law of the organization of society under the exclusive dominion of the United States, it is provided that plural marriages shall not be allowed. Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances.    *    *    * "

In the case under consideration, "every act necessary to constitute the crime was knowingly done, and the crime was therefore knowingly committed." The accused in his testimony admits knowledge of the seriousness of typhoid fever; admits that his child was seriously ill; and does not deny that the physician offered treatment and nurses free of expense; yet he refused to permit the child to receive the care and attention offered, and

which it clearly needed. He was advised by the county health officer that he was laying himself liable to prosecution; yet he persisted in refusing aid for the child. A case of more wanton neglect could hardly be found. There was neither ignorance of fact nor ignorance of law in this case.

In the case of *Reynolds v. United States, supra,* the court, discussing this feature of that case, says:

"The breaking of the law is the crime. Every act necessary to constitute the crime was knowingly done, and the crime was therefore knowingly commited. Ignorance of a fact may sometimes be taken as evidence of a want of criminal intent, but not ignorance of the law. The only defense of the accused in this case is his belief that the law ought not to have been enacted. It matters not that his belief was a part of his professed religion; it was still belief, and belief only. * * * When the offense consists of a positive act, which is knowingly done, it would be dangerous to hold that the offender might escape punishment because he religiously believed the law which he had broken ought never to have been made. No case, we believe, can be found that has gone so far."

In the case under consideration the constitutionality of the statute involved is not raised. The authorities cited, however, clearly establish the validity and wisdom of the law. We conclude that the instruction of the trial court, advising the jury that religious belief constitutes no defense under the statute, was correct.

The question of the necessity of medical attendance would be a question of fact for the jury. That question was submitted to the jury, and they found against the accused, and properly so under the record. Under the law in this state, there is probably no way of reaching an adult who refuses to accept medical aid for himself on his own responsibility; but under the statute, *supra,* persons will not be permitted to allow innocent children, dependent upon them, to suffer for the lack of necessary food, clothing, shelter, or medical attendance. As before stated, the law contemplates the administering of such aid for the protection of the health, as well as the life, of the child.

Finding no error prejudicial to. the rights of the accused, the judgment is affirmed.

FURMAN, P. J., and DOYLE, J., concur.