CARL I. DYER v. STATE.

No. A-8926.   Dec. 20, 1935.
(52 Pac. [2d] 1080.)

318

Edwards & Robinson, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiff in error was tried and convicted in the district court of Oklahoma county, the jury leaving the punishment to the court, upon an information charging that in said county and state, on the sixth day of July, 1934, Carl I. Dyer "did then and there willfully, unlawfully, wrongfully and feloniously without justifiable or excusable cause abandon and desert his lawful and legitimate child under the age of fifteen years, to wit: Laura Belle Dyer of the age of eight years, and did wholly fail, refuse and neglect to contribute anything to her support, contrary to," etc.

At the time appointed for judgment the defendant interposed a motion for a new trial, also a motion in arrest of judgment, which were overruled. On December 26, 1934, the court rendered judgment and sentenced the defendant to confinement in the state penitentiary at Mc-Alester for a term of three years, and the costs.

The statute (section 1830) under which the information is presented provides:

"Every person who shall without good cause abandon his wife in destitute or necessitous circumstances and neglect and refuse to maintain or provide for her, or who shall abandon his or her minor child or children under the age of fifteen years and willfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a felony and upon conviction thereof, shall be punished by imprisonment in the state penitentiary for any period of time not less than one year or more than ten years."

The facts established by the undisputed evidence and by the admissions of the defendant are as follows: They were married in 1925. A child was born to them, this daughter, Laura Belle. That the prosecuting witness has supported their child from her salary as a school teacher. On July 29, 1933, she obtained a divorce from him, which was granted on the ground of gross neglect of duty in that he failed to provide for her support and for the support of their daughter, seven years old; and by the decree the sole custody of the child was awarded to her, but it was silent as to the support and maintenance of the child. The decree shows that the defendant had abandoned his minor child. It appears that he had contributed nothing for the support of the child except $45 contributed after this prosecution was instituted; however the child had received some small gifts of money from his stepfather and an aunt of the defendant. On December 30, 1933, he married another woman.

As a witness in his own behalf, the defendant testified that he lives at Caldwell, Tex. Was married to the prosecuting witness in El Reno, and lived with her and their child for two or three years with his folks at Bristow. His wife then secured a divorce. They were remarried at Oklahoma City a year or two later; that he was living at Caldwell when his wife secured this divorce.

That when his wife was not teaching school in Oklahoma City, she and their child lived with his mother at Bristow. That he never had any money to send to his child, and did not send his wife any money. That since the 6th day of July, 1934, he has been receiving $50 a month and expenses, working for the Mid-Tex Oil Company. That his present wife has a farm and she supports herself. That while visiting in Oklahoma City he was arrested on this charge.

The principal proposition advanced on behalf of the defendant is:

"The divorce decree gave the prosecuting witness exclusive custody of the child and thereby relieved the defendant of any liability for the support of the child until a modification of the decree, and the defendant cannot legally be prosecuted for the failure to perform an act which by statute he had been exempted from performing."

In support of this proposition, the following two sections of the Civil Code (St. 1931) are quoted:

"671. When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper, either before or after final judgment in the action."

"1684. The parent entitled to the custody of a child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability."

Citing the case of People v. Hartman, 23 Cal. App. 72, 137 Pac. 611, 614, quoting wherein the court said:

"As we understand this decision, it is authority for holding that where, in a divorce proceeding, the custody

of a minor child is given the mother and no provision in the decree is made for the support of such child by the father, the parent entitled to the custody of the child must support it. By supplementary proceedings, in a proper case, the court may, under sections 138 and 139 of the Civil Code, require the parent who has not the custody of the child to contribute to its support, but, until some such proceeding is had, his failure to so contribute to the child's support cannot be made the ground of a criminal proceeding under section 270 of the Penal Code. In the case cited the court said: 'The legal effect, then, of both the Nevada decree and the guardianship decree was to give the mother the custody and control of the children without charging upon the husband their support. Under section 196 of the Civil Code this situation prima facie relieves the husband of the duty of support and casts it on the wife.' The principle would seem to apply as well to a domestic decree as to a foreign decree; the determining fact being, as here, that it devolved no duty on the father and did devolve it on the mother."

Also citing Dimond v. State, 110 Neb. 519, 194 N. W. 725; State v. Coolidge, 72 Wash. 42, 129 Pac. 1088. Also the cases of Bondies v. Bondies, 40 Okla. 164, 136 Pac. 1089; West v. West, 114 Okla. 279, 246 Pac. 599, 602.

Quoting from the opinion in the West Case as follows:

"We are inclined to the view that the law of nature and the law of the land, generally, require the father to support his children; this is a definite and fixed obligation, which both the children and society itself are entitled to have enforced against him, and to hold that a decree of divorce granted for the fault and misconduct of the husband, giving custody of children to the mother, and silent as to support and maintenance, discharges the father's obligation of support of his offspring, is to allow him to profit by his perversity or take advantage of his own wrong; but such is the decision of our court in re-

spect to the recovery of money expended prior to the modification of the decree of the original action or the institution of an independent action. Bondies v. Bondies, supra."

We are urged to give a construction to section 1830, supra, in harmony with these decisions.

Many of the states have statutes making it a criminal offense for a father to fail to support his child, or for a husband to fail to support his wife.

It is said by some courts and text-writers that the primary object is to redress a public grievance by relieving the public from the burden of caring for a helpless child, or an indigent wife; while others take the view that these statutes, though criminal rather than civil, in kind, are in the final analysis really designed as a remedy for the benefit of the wife or the child, in addition to the remedies afforded by civil proceedings. State v. Langford, 90 Or. 251, 176 Pac. 197, 201; People v. Malsch, 119 Mich. 112, 77 N. W. 638, 75 Am. St. Rep. 381; State v. Waller, 90 Kan. 829, 136 Pac. 215, 49 L. R. A. (N. S.) 588; 13 R. C. L. 1191.

In State v. Gillmore, 88 Kan. 835, 129 Pac. 1123, 1126, 47 L. R. A. (N. S.) 217, 226, it is said:

"The object of the statute was to compel the husband, if he were able to do so, to support his wife and children."

The obligation of parents to support their offspring rests upon an entirely different foundation from that upon which the law bases the duty of the husband to support his wife. That obligation is at once legal and natural. It springs as necessarily from the law as from the primal instincts of human nature. Its consistent enforcement is equally essential to the well-being of the state, the morals

of the community, and the development of the individual. Prolonged childhood is a condition of civilization as well as a product of conscience. The child, helpless in extreme infancy and required in the maturer years of its minority to obey the reciprocal duty of serving its parents, is not to be deprived of its natural and legal right of protection and support by its father, because of any family quarrel or of any agreement between husband and wife. It is not a party to divorce proceedings. It is not barred as to its rights by any decree therein. McAllen v. McAllen, 97 Minn. 76, 77, 106 N. W. 100.

In the well-considered case of Spencer v. Spencer, 97 Minn. 56, 105 N. W. 483, 484, 2 L. R. A. (N. S.) 851, 114 Am. St. Rep. 695, 7 Ann. Cas. 901; 20 R. C. L. 622, commenting on the minority rule that a divorce decree awarding the custody of the minor children to the wife absolves the husband from all further duty to support and educate them, Chief Justice Start said:

"The reason urged in support of this rule is that the awarding of the custody of the children to the mother deprives the father of their services, and that support and service are in such a case reciprocal, and that the mother, to whom the custody of children is awarded, must, unless the decree provides otherwise, support them. This is not a good reason; for, if the divorce is granted for the father's misconduct, it is his wrongful act that deprives him of their services, and not the court, which intervenes for the protection of the children. Another reason urged is that the court, where it has awarded the custody of the children to the mother without expressly providing for their support, is presumed to have made all of the provisions for their support that it was necessary; hence the decree is conclusve as to the obligations of the husband, unless modified in proceedings had in the original action. It would seem, if the court omits to make in its decree any provision for the support of the children, that the pre-

sumption would be that the court deemed it best to leave the matter of the support of the children to rest upon the father's legal liability to support them until its further order in the premises. Again, in cases where the husband deserts his family in one state and becomes a resident of another state, leaving no property in the state where he left his wife and children, and where she commences an action against him for a divorce for his wrong, the court would have jurisdiction of the wife, of the marriage status, and of the custody of the children, but not of the husband or his property. It would be impracticable to make and impossible to enforce any decree as to the support of the children in such a case. Thurston v. Thurston, 58 Minn. 279, 59 N. W. 1017. If in such a case the decree awards the custody of the children to the mother, but is silent as to their support, can it be presumed, in favor of the recreant husband, that the court determined that no order as to maintenance was necessary, and that it was intended to free the husband from his natural and legal obligation to support his children? We cannot concur in the doctrine of the cases which so hold.

"Upon principle, and the weight of judicial authority, we hold that the legal obligation of a father for the support of his minor children is not impaired by a decree of divorce at the suit of his wife for his misconduct, which gives the custody of the children to her, but is silent as to their support."

The facts in the Spencer Case are similar to the facts in this case. The court granting the divorce had jurisdiction over the wife, marriage status, and custody of the child, but not of the property of the defendant. He was a resident of the state of Texas, and it would be impossible to enforce any decree against him for the support of the child.

In the case of State v. Langford, supra, it is said:

"One line of authorities proceeds upon the theory that the duty of the father to support the child and the

obligation of the latter to serve the former present reciprocal rights and duties, and that therefore to award the custody of the child to the mother is to deprive the father of the child's services, and hence the loss of the right to the services of the child operates as a release from the duty to support; but a majority of the well-considered precedents denounce and condemn this cold and illogical doctrine, which not only ignores the rights and welfare of the child, but also enables an unfaithful husband and unnatural father to compel his wife to divorce him, on account of grievous wrongs done by him, with the assurance given to him in advance that when she does divorce him she will not have lost the maternal instinct, but will cling to the child, and thus enable him further to wrong her by cowardly casting his burden upon her; for the great weight of judicial authority is to the effect that a father is not released from his obligation to support his child by reason of the fact that the mother has secured a divorce and been awarded the custody of the child by a decree which makes no provision for the child's maintenance."

This rule is supported by the following cases: State v. Seghers, 124 La. 115, 49 So. 998; Industrial Commission v. Drake, 103 Ohio St. 628, 134 N. E. 465; Buckminster v. Buckminster, 38 Vt. 248, 88 Am. Dec. 652; Alvey v. Hartwig, 106 Md. 254, 67 A. 132, 11 L. R. A. (N. S.) 678, 14 Ann. Cas. 250; Evans v. Evans, 125 Tenn. 112, 140 S. W. 745, Ann. Cas. 1913C, 294; Graham v. Graham, 38 Colo. 453, 88 Pac. 852, 8 L. R. A. (N. S.) 1270, 12 Ann. Cas. 137; Connett v. Connett, 81 Neb. 777, 116 N. W. 658; Dolloff v. Dolloff, 67 N. H. 512, 38 A. 19, 20; Gulley v. Gulley, 111 Tex. 233, 231 S. W. 97, 15 A. L. R. 564, and cases in Annotation, page 569.

The reasons upon which this rule rests are well stated in the case of Dolloff v. Dolloff, supra, in which the court said:

"While the divorce destroyed the relation of husband and wife, and made them as strangers to each other, it did not destroy the relation between the husband and his child. As to her, his duty and liability remained the same, except in so far as he was incapacitated or discharged by the decree, which simply took from him her custody. This did not release him from any pre-existing natural, legal, or statutory duty to support her."

The primal duty of the father to support his offspring was not directly involved in the case of Bondies v. Bondies, supra. That holding was based on section 1693, which reads:

"A parent is not bound to compensate the other parent or a relative for the voluntary support of his child without an agreement for compensation, nor to compensate a stranger for the support of a child who has abandoned the parent without just cause."

In the case of Hunter v. State, 10 Okla. Cr. 119, 134 Pac. 1134, 1138, L. R. A. 1915A, 564, Ann. Cas. 1916A, 612, this court said:

"We cannot agree with counsel for appellant that the fact that the mother and the grandparents of the child were providing it with food and clothing constitutes any justification of the conduct of the appellant. Men cannot shift their burdens upon the shoulders of others in this way. The father, who has brought life into this world, must make a manly effort to support it, and if he does not do so he is guilty under the law."

This duty to support the offspring is a continuing obligation. Allred v. State, 28 Okla. Cr. 13, 228 Pac. 788; Dean v. State, 55 Okla. Cr. 356, 30 Pac. (2d) 195.

Although the language of the statute (§ 1830) is "willfully neglect or refuse to maintain or provide for such child," still it is not necessary for the state to prove that the father has wholly failed and neglected to fulfill his

duty to support his child. The statute is violated, not only where there is a complete failure to support, but also where there is a partial failure. This neglect or refusal must be willful or negligent, and not a mere failure on account of inability. Dempsey v. State, 108 Ark. 76, 157 S. W. 734.

The parent performs his duty when he provides for the support of his child or contributes to the support of such child in accordance with his ability, whatever is necessary for support and maintenance according to their situation and condition in life.

Although both parents are under the duty, legal as well as moral, to support, maintain, and educate their children during minority, the duty rests primarily in this state upon the father.

The statute, § 1685, provides:

"The father of a legitimate unmarried minor child is entitled to its custody, services and earnings; but he cannot transfer such custody or services to any other person, except the mother, without her written consent, unless she has deserted him, or is living separate from him by agreement. If the father be dead, or be unable, or refuse to take the custody, or has abandoned his family, the mother is entitled thereto."

According to the great weight of authority and according to what we believe is the plain intent of our statutes, the fact that the mother alone or together with other persons furnished all the support needed for the child does not constitute good or sufficient cause for any failure or neglect by the father. Hunter v. State, supra; State v. Waller, 90 Kan. 829, 136 Pac. 215, 49 L. R. A. (N. S.) 588; 20 R. C. L. 623.

The facts admitted by the defendant himself show abandonment, failure and neglect to support said child, and this constitutes prima facie evidence of willfulness upon his part wthin the meaning of the law. And also show that his neglect was without good cause. The words "good cause," as used in the statute, mean a substantial or legal cause, as distinguished from an assumed or imaginary pretense. State v. Anderson, 209 Iowa, 510, 228 N. W. 353, 67 A. L. R. 1366.

The defendant admitted that he furnished his wife and their child no money for their support, and it sufficiently appears that the prosecuting witness had nothing to support their child save as she earned through her own labor.

Generally speaking, a wife is entitled to support at the hands of the husband, and both law and common humanity charge him with the duty of maintaining his own infant child.

It was to prevent and punish such outrages against humanity and the marriage obligation that the statute was enacted, and its force and effect should not be nullified by any nicety of construction.

It is our conclusion that under the law and the evidence the verdict was fully warranted, and that no sufficient reason exists for a reversal of the conviction.

Finally, it is urged on behalf of the defendant that the punishment imposed by the court below is excessive.

Upon a careful review of the entire record, we are persuaded that the punishment is excessive and that the judgment should be modified. The sentence imposed by the court below will therefore be modified and the term of imprisonment fixed at two years.

We remark here that the act under which the defendant was convicted (section 1831), among other things, further provides: That upon conviction of any person, under the provisions of this act, the Governor may, before or after sentence, parole said person upon the recommendation of the trial judge, upon said person entering into an undertaking in the form provided by the judge of said court, with two or more good and sufficient sureties, conditioned that the said convicted person shall within ten days from the first day of each month, pay to the clerk of the court where he was convicted such amount as has been fixed by the court for the support of said child.

For the reasons stated, the judgment and sentence as modified must be, and it is, affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.