## 25695. COLEMAN *v.* CITY OF GRIFFIN.

Decided September 17, 1936.
Adhered to on rehearing December 18, 1936.

*John O. Owen, Carl F. Hutcheson, Charles G. Reynolds,* for plaintiff in error.

*J. O. Futral, W. H. Connor,* contra.

MacIntyre, J. Coleman was convicted, in the recorder's court of the City of Griffin, of a violation of section 1 of an ordinance of said city which reads as follows: "That the practice of distributing either by hand or otherwise circulars, handbooks, adver-

tising, or literature of any kind, whether said articles are being delivered free, or whether same are being sold within the city limits of the City of Griffin, without first obtaining written permission from the city manager of the City of Griffin, . . shall be deemed a nuisance, and punishable as an offense against the City of Griffin." The judge of the superior court refused to sanction a petition for certiorari, and the defendant excepted.

At the trial in the recorder's court, Paul Slaton, a citizen of Griffin, testified that he knew Mr. Coleman and saw him in Griffin on March 15, and that Mr. Coleman gave him a yellow card and asked him if he did not want to buy a book. Mr. Slaton told him that he did not want to read the card and he did not want to buy a book, and then Mr. Coleman gave Mr. Slaton a radio slip. The yellow card was introduced in evidence. It read as follows: "The newspapers have had much to say about loyalty. The Associated Press, however, declines to publish the truth regarding this issue. Every fair-minded person should want to know the true facts. I would like to leave with you some booklets which discuss problems affecting you. New political methods are everywhere. Dictators grab control of the governments and make special laws. How can you be loyal to all and still be true to God? The answers in these booklets will help you, because there is no dodging or side-stepping the issue, but straightforward Bible answers, which is what you need and want. These three booklets please read carefully, and by contributing, say, ten cents, you will make it possible to print more of these which can be placed in the hands of other persons desiring truth." After the admission of this evidence, the defendant made a statement admitting that he did not obtain from the City of Griffin a permit to distribute circulars, handbooks, advertising, or literature of any kind, and that at the time he was arrested he was distributing circulars, handbooks, advertising matter, or literature within the City of Griffin. He further stated that he did not ask for a permit from the City of Griffin, because he was sent by Jehovah to do His work, and that His law is supreme and above every human law, and to apply for a permit to do His work would be an act of disobedience to His commandment and it would be an insult to Almighty God. A copy in full of said statement is as follows: "I admit that I did not obtain from the city manager of the City of Griffin a permit

to distribute circulars, handbooks, and advertising, or literature of any kind; and I further admit that at the time I was arrested by the police officers of the City of Griffin I was distributing circulars, handbooks, advertising matter or literature within the City of Griffin. I am one of Jehovah's witnesses, who are entirely devoted to God, and who obey His law by publishing his truth without money consideration. I am a true and sincere follower of Christ Jesus, who is the Son of Jehovah God. I have consecrated myself to do the will of God, and to follow in the footsteps of Jesus. In obedience to the command of Jehovah I was preaching the gospel of His kingdom from house to house when I was arrested. God's command as set forth in His holy word at Isaiah 61:1, 2; Matthew 10:7, 12; John 18:37; Acts 20:20; 1 Peter 2:21. If I failed or neglected to obey these commandments, I would be destroyed. This is shown in Acts 3:22, 23, which reads as follows: 'For Moses truly said unto the fathers: A prophet shall the Lord your God raise up unto you of your brethren, like unto me; him shall ye hear in all things whatsoever he shall say unto you. And it shall come to pass that every soul which will not hear that prophet shall be destroyed from among the people.' I called on the people at their homes and told them about the kingdom of Jehovah. I displayed to them books and booklets which contain the message of the kingdom, and gave them opportunity to secure this printed message if they so desired. I further offered to the people invitations to hear the kingdom message over the radio. As I had opportunity I told the people how they could have a part in the work, either through going forth to the people with the message or by making a small contribution to assist in carrying the message forward. The message is too important and the time is too short to cover the whole work in a few words; hence the message of facts concerning Jehovah's kingdom and giving the scriptural authority. This enables the people to sit quietly in their own homes and to inform themselves of and concerning the real meaning of present-day world distress, and of the kingdom that will bring relief. Under the authority of Jehovah I am a duly ordained and authorized minister of the gospel, and it is incumbent upon me, in obedience to God's law, to preach the gospel. I worship Jehovah God by obeying His commandments. God's work, the Bible, commands all who worship Him in spirit and in truth

to go from place to place and tell others about Him and His kingdom. At the time I was arrested I was going from house to house in obedience to His word, and according to the dictates of my own conscience. I did not ask for a permit from the police department, because I am sent by Jehovah to do His work. His law is supreme and above every human law. To apply for a permit to do His work would be an act of disobedience to his commandment. It would be an insult to Almighty God, and would in time result in my own destruction. I have no disposition to violate any law, but must obey God rather than man, and in this way I worship Him as commanded. Luke 20:25, Acts 3:23, Acts 4:19, Acts 4:34-38. I get the books and booklets to exhibit to the people from the Watch Tower Society, which is a corporation organized for the very purpose of preaching the Bible message in printed form. It publishes the messages of God's kingdom in book form to be carried to the people and exhibited to them for the purpose of informing them of the truth. The money received is far less than the cost of carrying on the work. The deficit is made up by voluntary contributions of men and women who are anxious to preach the gospel of the kingdom in obedience to God's commands."

The defendant contends that "The ordinance involved does not apply to the work of this defendant, for the following reasons: 1. That the act complained of, and for which defendant was arrested, was done in obedience to the mandate of the Most High God, Jehovah, the Creator of the universe, whose laws and commands are superior to all human laws, ordinances, statutes or regulations. 2. That to apply said ordinance to the work of this defendant brings it into conflict with the provisions of the constitution of this State, guaranteeing freedom of worship in accordance with the dictates of conscience; and further brings said ordinance into conflict with the provisions of the fourteenth amendment to the constitution of the United States, providing that no State shall deprive any person of life, liberty, or property, without due process of law. 3. That the Supreme Court of the United States has decreed that 'This is a Christian nation,' and therefore the nation and all States, counties, and municipalities are estopped and precluded from interfering with or regulating the presentation of a Christian message to the people."

The City of Griffin had the right and power to enact the ordinance under consideration. It is constitutional and valid as prescribing a rule of action for all of those who engage in the practice of distributing either handbills or other circulars, handbooks, advertising, or literature of any kind, whether said articles are being delivered free or whether the same are being sold within the city limits of Griffin. We do not think the defendant's argument is sound, that, because he conscientiously believes that he is permitted by the law of God to distribute in the City of Griffin, by hand or otherwise, circulars, handbooks, advertising, or literature of any kind without obtaining the written permission from the city manager of Griffin, he may violate with impunity an ordinance declaring it illegal to do so. A man's religious belief can not be accepted as a justification for his committing an overt act made criminal by the laws of the city. The ordinance which imposes the penalty operates upon all alike, and interferes with no man's religious belief. It is directed against the acts, and not the beliefs of the citizen, and a violation thereof can not be justified ·by the contention that it interferes with the religious belief of the citizen. In Reynolds v. U. S., 98 U. S. 145 (25 L. ed. 244), where the question involved was a polygamous marriage between two persons commonly known as Mormons, who had been previously married, this doctrine was laid down: "A party's religious belief can not be accepted as a justification for his committing an overt act made criminal by the law of the land." See also Owen v. State, 6 Okla. Cr. 110, 116 (116 Pac. 345, 36 L. R. A. (N. S.) 633, Ann. Cas. 1913B, 1218). As bearing on the question under consideration, we quote the following from the Reynolds case, supra: "In our opinion, the statute immediately under consideration is within the legislative power of Congress. It is constitutional and valid as prescribing a rule of action for all those residing in the territories, and in places over which the United States have exclusive control. This being so, the only question which remains is whether those who make polygamy a part of their religion are excepted from the operation of the statue. If they are, then those who do not make polygamy a part of their religious belief may be found guilty and punished, while those who do must be acquitted and go free. This would be introducing a new element into criminal law. Laws are made for the government of actions; and while they can not

interfere with mere religious belief and opinions, they may with practices. Suppose one believed that human sacrifices were a necessary part of a religious worship, would it be seriously contended that the civil government under which he lived could not interfere to prevent a sacrifice? Or, if a wife religiously believed it was her duty to burn herself upon the funeral pile of her dead husband, would it be beyond the power of the civil government to prevent her carrying her belief into practice? So, here, as a law of the organization of society under the exclusive dominion of the United States, it is provided that plural marriages shall not be allowed. Can a man excuse his practices to the contrary because of his religious belief? To permit this would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

A criminal intent is generally an element of crime, but every man is presumed to intend the necessary and legitimate consequences of what he knowingly does. The breaking of the law is the crime. Every act necessary to constitute the crime in this case was knowingly done, and therefore the crime was knowingly committed. Ignorance of a fact may sometimes be taken as evidence of a want of criminal intent, but not ignorance of the law. That defense of the accused in this case, which is his belief that the law ought not to have been enacted, is not meritorious. It matters not that his belief was a part of his professed religion; it was still belief, and belief only. There should' be no restraint on the free exercise of religion according to the dictates of the conscience. No external authority should be allowed to place itself between the finite being and the Infinite when the former is seeking to render homage that is due, and in a mode which commends itself to his conscience and judgment as being suitable for him to render, and acceptable to its object. 2 Cooley's Constitutional Limitations, 968. But, "Religious liberty does not include the right to introduce and carry out every scheme or purpose which persons see fit to claim as a part of their religious system. No one can stretch his liberty so as to interfere with that of his neighbor, or violate police regulations or the penal laws of the land, enacted for the good order and general welfare of all the people. Liberty founded by the fathers was not license unrestrained by law." McMaster *v.*

State, 21 Okla. Cr. 318 (207 Pac. 566, 29 A. L. R. 292). Prohibiting one from distributing literature, as stated in the ordinance, without the permission of the city manager of Griffin, does not deprive him of his constitutional right of the free exercise and enjoyment of religious profession and worship, even though it prohibits him from introducing and carrying out a scheme or purpose which he sees fit to claim as a part of his religious system.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*

ON REHEARING.

MACINTYRE, J. Counsel who represent the plaintiff in error on the rehearing in their brief very frankly state that *"the truth is that counsel who drew the petition for certiorari and first presented the case in this court had in mind the religious objections which he strenuously urged.* The court has held that these objections. to the constitutionality of the ordinance were not good. But if, unwittingly perhaps, counsel did present a good secular objection to the constitutionality of the ordinance, then the least the court can do is to enforce that objection to keep a man from going to jail for a crime he did not commit." (Italics ours.) The italicized part of counsel's statement is the same construction that this court put upon the petition for certiorari; that is that the objections urged by the plaintiff in error were the religious objections, and did not go to the question that the discretion given by the ordinance to the city manager of Griffin was so arbitary and uncontrolled that it was a violation of the 14th amendment to the constitution of the United States. The relevant parts of the petition for certiorari, which constitute the only record before this court of the proceedings in the trial court, are as follows: "4. The ordinance should not be applied to the work of this defendant, because to so apply it brings it in conflict with the provisions of the 14th amendment of the United States constitution, which provides that no State shall deprive any person of life, liberty, or property without due process of law. 5. Petitioner shows that all questions set forth herein and assigned as error were insisted upon at the trial of said cause before the recorder." This charge as to the unconstitutionality of the ordinance, failing to state wherein the ordinance violates the 14th amendment to the constitution of the United States, is too indefinite to invoke any ruling upon the constitutionality of the ordinance. *Jordan v. State,* 172 *Ga.* 857, (159 S. E. 235);

*Curtis* v. *Helen,* 171 *Ga.* 256 (2-c, *d*) (155 S. E. 202). See also *Palmer* v. *Phinizy,* 151 *Ga.* 589, 591 (107 S. E. 852). Irrespective of what may be the rulings in other States, we feel. that we are bound by the rulings of the Supreme Court of this State as to when we can consider the unconstitutionality of an ordinance.

*Judgment adhered to. Broyles, C. J. and Guerry, J., concur.*