# PAUL C. GOODART v. STATE.

No. A-9383. March 24, 1939.

(88 P. 2d 911.)

D. D. Archer and Paul R. Dillard, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam S. Lattimore, Asst. Atty. Gen., and Lewis R. Morris, County Attorney, and John F. Eberle, Asst. Co. Atty., both of Oklahoma City, for the State.

DOYLE, P. J. This appeal is from a judgment of the district court of Oklahoma county, rendered upon a verdict convicting the defendant of the crime of wife and child abandonment, but the jury failed to agree upon the punishment. On March 6, 1937, motion for new trial was denied. Thereupon the court sentenced the defendant to be confined in the state penitentiary at McAlester for the term of seven years.

The information, filed in the district court of Oklahoma county February 6, 1937, charges that in said county on the 19th day of January, 1937, Paul C. Goodart "did then and there willfully, unlawfully and feloniously commit the crime of wife and child abandonment in the manner and form as follows to wit: That is to say, the said defendant, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully, wrongfully and feloniously desert and abandon his lawfully wedded wife, to wit: Mrs. Paul C. Goodart, and did desert and abandon his two minor children under the age of 15 years, to wit; Roy Goodart of the age of seven years and Kenneth Goodart of the age of five years; said desertion and abandonment on the part of the said defendant left said wife and children in destitute and necessitous circumstan-

ces, and did willfully neglect and refuse to maintain and provide for said wife and children, contrary to," etc.

In order to present the questions raised as to the sufficiency of the evidence, and exceptions relating to rulings of the court on the admission of evidence, and by exceptions to instructions, we will briefly state the testimony.

The state called four witnesses. Marie G. Goodart, wife of the defendant, testified that they were married September 2, 1928, at Winfield, Kan.; that they have two children, Roy, now seven years old, and Kenneth, now five years old; that in 1933, when they were living in Kansas City, her husband left her, leaving them dependent upon the county until her brother came to Kansas City five months later and they returned to Oklahoma City with him; that about Christmas that year her husband came to Oklahoma City, and was placed in jail for nonsupport; he promised to support his family, and he was discharged, and then he lived with her for three months, when he left them again; that was in 1934; that she did not know where he was until November, 1936, when he sent her $10; that when he left her in Kansas City he did not leave any money with her; that they were living in a two-room kitchenet and the county paid the rent for two months before she returned to Oklahoma City; that on her return to Oklahoma City she lived with her brother, her mother and her grandmother, and for six months her brother provided food and clothing for her and her children, then the provident association assisted them one month; that her husband filed a divorce action against her in April or May, 1935, and the court ordered him to pay $50 a month for the support of the children; that the first month the defendant paid $20 or $25 into court, then he disappeared and she did not hear any more about him for more than a year. That for 18 months the provident association gave

her $3 a month for the support of the children, then the county welfare board gave her groceries; that her brother Frank helped her and she worked for the Y.W.C.A. two or three days a week as elevator operator and received $2 a day.

Frank Huff testified that he lives in Oklahoma City and supports his mother and grandmother who live with him; that following the marriage of his sister they were housekeeping in Oklahoma City for about two months, then they moved to Kansas City, Mo., about three years later he found her and the children in destitute circumstances and paid for their transportation from Kansas City to his home in Oklahoma City, and supported them for about five months; that when the defendant returned to Oklahoma City he was placed in jail, that all this time the defendant's wife and children were in destitute and necessitous circumstances.

Mildred Mench, of the United Provident Association, Oklahoma City, testified that she was acquainted with the defendant and his wife and produced the record of groceries, milk and clothing given to defendant's wife and children, also rent paid and dates when given.

Pauline Krieger testified that she was a case-worker on the county welfare board of Oklahoma City; that Mrs. Goodart and her children were transferred from the provident association to her in August, 1936, since which time, until February this year, they received $5 a month from the county fund for the support of the children.

As a witness in his own behalf the defendant testified that his age was 29 years; that he came with his folks to Oklahoma City in 1920, that he married his wife in 1929; that they went to Winfield, Kan., to be married and immediately came back and lived in Oklahoma City for two months, then they moved to Kansas City; that his first child was born there January 2, 1930, and his other child was

born in October, 1932; that he remained in Kansas City until 1934, and supported his wife and family and paid the rent until his wife left Kansas City with the children; that he did not know why she left, or where she went until his father wrote that she was here; that when he lost his job he came here to see the babies, and when he went to see his wife she had him arrested and he was put in jail 30 days, then he signed an agreement, the case was dropped, and he went to live with her; that she quarreled with him all the time and threatened to put a knife in his back, and kept an ice pick under her pillow, so he brought divorce suit, as the only way he could get away; that she got a court order for $60 a month and on a hearing the court cut it to $50; that he paid $25 and went to Kansas City, Mo., Memphis, Tenn., Dallas, then to Ft. Worth, Tex., and finally went to California; went to work there and sent his wife $10 of his first week's wages. He contracted to go and work in the Sierra Mountains for $6.50 a day, with room and board, then wrote to his wife and asked her if she would come to him, and the reply was a warrant. He was arrested in Los Angeles and held five days before John Adams, deputy sheriff, came for him.

The foregoing statement is a sufficient answer to the contention made that the evidence is insufficient to support the verdict.

The facts admitted by the defendant himself show abandonment of his wife and children, and failure and neglect to support said children.

It is also urged that the court erred in admitting, over the defendant's objections, incompetent testimony.

Counsel in their brief say:

"This point was that Mr. Goodart committed a specific crime in a detailed manner upon a certain date and within a defined jurisdiction.

"Can it be said that the voluminous testimony concerning the actions of the defendant years previously was confined to a point in issue as of January 19, 1937, upon which date an alleged offense was charged to the defendant?"

There is no merit in this contention. The statute defines but one offense, that may be committed in different ways; the husband and father may by the same act abandon his wife without just cause, and minor child or children under the age of 15 years in destitute and necessitous circumstances, and fail to provide for either or both. If he does either or both, he has committed but one offense, and that offense continues until proper provision, to the best of his ability, is made for their adequate support.

In Allred v. State, 28 Okla. Cr. 13, 228 P. 788, it is said:

"The manifest purposes of this statute are twofold—first, to make provision for the maintenance of abandoned wives and children, so that they may not become public charges on the state, and for humanitarian reasons; and, second, to punish those upon whom the moral and legal obligation for support rests when such person refuses or neglects to furnish appropriate support. This is a statute providing relief and punishment for the omission of a duty, as distinguished from punishment for the commission of an illegal act."

In Dyer v. State, 58 Okla. Cr. 317, 52 P. 2d 1080, 1084, we said:

"Although the language of the statute (§ 1830, 21 Okla. St. Ann. § 853) is 'willfully neglect or refuse to maintain or provide for such child,' still it is not necessary for the state to provide that the father has wholly failed and neglected to fulfill his duty to support his child. The statute is violated, not only where there is a complete failure to support, but also where there is a partial failure. This neglect or refusal must be willful or negligent, and not a mere failure on account of inability."

In the case of Dean v. State, 55 Okla. Cr. 356, 30 P. 2d 195, this court held:

"Abandonment and neglect or refusal to provide for a wife and minor children in violation of section 1830, O.S. 1931, 21 Okla. St. Ann. § 853, is in its nature a continuing wrong and begins and continues so long as there is a failure of the husband and father to perform his duty. A continuing dependency and neglect and refusal to maintain and provide vitalizes the offense, and the fact that the abandonment and neglect began more than three years before a prosecution is commenced affords no ground for the interposition of the statute of limitations."

It is also urged that the court erred giving instruction No. 9, and in their brief say:

"To call to the jury's attention that the defendant might, upon posting bond, and by recommendation of the trial judge obtain a parole from the Governor of the state, is reversible error."

In the case of Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914, opinion this day handed down, the precise question was discussed and passed upon, the conclusion arrived at and announced being adverse to the view contended for by defendant's counsel in this case. The court held that said instruction did not work to the prejudice of the defendant, or deprive him of any substantial right, and the giving of said instruction did not constitute prejudicial error.

This court is not permitted to reverse a rightful judgment of conviction on the ground of misdirection of the jury, unless after an examination of the entire record it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. Proc. Crim. O.S. 1931, § 3206, 22 Okla. St. Ann. § 1068.

Generally speaking, a wife is entitled to support at the hands of the husband, and both law and common

humanity charge him with the duty of maintaining his own infant children.

It was to prevent and punish such outrages against humanity and the marriage obligation that the statute was enacted, and its force and effect should not be nullified by any nicety of construction.

We have carefully reviewed the remaining assignments of error, and we are convinced that none of them are well taken. We see no reason to doubt that this conviction was justified by the evidence, and in our opinion the law has been vindicated in the judgment.

It is accordingly affirmed.

BAREFOOT and DAVENPORT, JJ., concur.