**BOHANNON  v.  STATE.**
No. A–11946.

Criminal Court of Appeals of Oklahoma.
April 7, 1954.

Geb Moriarty, Ponca City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

The plaintiff in error hereinafter referred to as defendant, was charged by information filed in the county court of Kay County with the crime of omitting to provide for a minor child. He was tried before a jury on the 2nd day of April, 1953, found guilty, but the jury being unable to agree upon the penalty to be assessed, left that to the court, who entered judgment ordering that defend-

ant be confined in the county jail for a period of one year, and pay a fine of $200 and costs of the action; but providing, "Said confinement and payment of fine to be suspended upon the condition, and for so long as the defendant shall pay to his former wife, Erna Bohannon, the sum of $50 per month, together with the payment of an additional $15 per month until all back child support dues shall be paid." At which time defendant advised the court he would not make these payments, as he could not. Defendant then expressed the intention of appealing his case to this court, and thereupon the court, apparently deeming his efforts to aid both the father and the child as having failed, entered judgment assessing punishment of the defendant at confinement in the county jail of Kay County for a period of one year, and a fine of $200 and the costs.

The case made was filed here on June 8, 1953, and a brief was due thirty days thereafter, and in spite of the fact that no brief had been filed, the case was set on the docket for oral argument for December 2, 1953, but no one appeared in behalf of the defendant. Thereafter, on February 17, 1954 a brief was filed for defendant by permission of court, and the Attorney General has filed an answer brief.

For reversal defendant urges three propositions: First, that the evidence is insufficient to sustain the verdict; second, that the court sentenced him "twice", which was error; and third, that the punishment is excessive.

A summary of the evidence is required.

The record discloses that the defendant's wife was a German war bride. Their son was born May 9, 1946. Thereafter in 1948 defendant provided passage for his wife and child to the United States. Defendant and his wife first met in 1945, when he was a member of the United States Army, and the complainant worked for the American Government. They established a home in Ponca City in 1948. In August, 1952 the parties were divorced and the wife was awarded custody of the child, Roland, for ten months of each year, and the father was awarded custody for two months of

each year. The divorce decree provided that the father, defendant here, was to pay the wife $50 per month for the support of the minor child. The mother, Erna Bohannon, estimated that it required about $25 per month for groceries, for her son, $12 for milk, $8 to $10 for clothing, and $5 medical. She stated that since the divorce she had had to spend $140 to $160 for doctors' bills and medicines for the child, who was ill fourteen days, and that she lost eight days from her work, and claimed the total medical expenses were $260. She testified that she asked the defendant to pay half the medical bills, and he promised to do so, but failed to carry out his promise.

Witness testified that defendant paid her a total of $125 for child support following the divorce: $50 in September, 1952, $50 in October, 1952, and $25 in' November, 1952; that he paid her nothing in December, 1952, nothing in January, February or March, 1953. The information in the case was filed January 17, 1953 and the trial took place on April 3, 1953.

This witness further testified that defendant had been employed during their marriage at "Cobb Pontiac" and his earnings during that time were approximately $300 per month; that he was at the time of the trial employed at "Kay Body Shop"; that she did not know what his earnings were there, but he had been employed all the time since the divorce. After the divorce the wife was employed at "Gruner Company" and made about $250 per month, but that she had lost her job "last Saturday" and had been unable to regain her employment. Mrs. Bohannon was further questioned as follows:

"Q. Have you ever had occasion to ask your former husband for money? A. No, he says, he said he had no money.

"Q. Did you find that out? A. I couldn't find that out. I didn't go deeper into that.

"Q. When he ceased to make his periodic support payments—did you have occasion to ask him to give you some money to help support the child? A. Can you explain better to me?

"Q. Did you ever ask him for any money? A. I asked him on different times but he said he has no money."

Witness stated that prior to the divorce proceedings she and the defendant were separated and that during that time the defendant failed to furnish her support money for their child.

At the close of the State's evidence counsel for the defendant interposed a demurrer based on the contention that the evidence was insufficient to sustain the charge. The demurrer was overruled, exceptions saved, and thereafter the defendant testified.

The defendant stated that he was the former husband of Erna Bohannon, that they had the one child, and he and his wife were divorced; that the court awarded the child to the wife for ten months of the year, and to him two months of the year; that the decree of divorce entered in the district court of Kay County in August, 1952 required him to pay the wife $50 per month support money for the child. He testified that he was making $36.85 payments on the home that belonged to the parties, and could not do that and pay her $50 per month. He stated that he had earned from January 1, 1953 to March 15, 1953, the sum of $604.95. By calculation this averaged close to $60 per week, or approximately $240 per month. Defendant's defense was that he had living expenses of his own and that he was supporting his mother, and he simply could not afford to do that, pay the $36.85 house payments and pay the child support money. He stated that he did not intend to neglect his child, and this was so in the past as well as the future.

On cross-examination defendant admitted that his mother "draws an old age pension"; that he owned a 1946 Chrysler automobile and was out necessary expense of its operation, and that his work was approximately three blocks from his residence. Defendant also admitted that his wife had contributed the sum of $1,700 toward the purchase of the home and that under the decree of the court she was to have said sum returned to her on sale of the home.

■ A consideration of the testimony of the prosecuting witness read in connection with the statutory provision, Tit. 21 O.S. 1951 § 852 hereinafter quoted, leaves no doubt but that the State made out a prima facie case of failure to provide for his minor child for the period covered by the testimony. The fact that the parties were divorced did not relieve defendant from any pre-existing, natural, moral or legal duty to support the child of the parties. Edwards v. State, 85 Okl.Cr. 285, 187 P.2d 248; Cowley v. State, 65 Okl.Cr. 479, 88 P.2d 914; Dobbins v. State, Okl.Cr., 268 P.2d 307.

■ Defendant's defense was based on his contention that although he was employed all the time following the divorce, making approximately $250 per month, that by reason of the fact that he was having to pay $36.85 per month on a home owned by him and his former wife, and support his mother and himself, he could not do those things and pay the $50 and that some attorney advised him to just make the payments on the home if he could not do both. It is further argued that when the prosecution was commenced defendant was in arrears for only the November 15 payment of $25, two $25 payments for December, and the $25 payment for January 1. This court has repeatedly held that a partial failure to support a person's children constitutes a transgression of the law. Dobbins v. State, supra; Edwards v. State, supra; O'Donley v. State, 91 Okl.Cr. 352, 219 P.2d 259; Cowley v. State, supra; Dyer v. State, 58 Okl.Cr. 317, 52 P.2d 1080; Goodart v. State, 65 Okl.Cr. 472, 88 P.2d 911.

The question is: If the evidence was sufficient in the first instance to make out a case for the State, still, was the evidence as a whole sufficient to support the verdict of the jury and the judgment entered.

The statute forming the basis for the prosecution is Tit. 21 O.S.1951 § 852, which reads as follows:

"Every parent of any child who wilfully omits, without lawful excuse, to perform any duty imposed upon him by law to furnish necessary food, clothing, shelter or medical attendance for such child is guilty of a misdemeanor."

■ Of course the within prosecution was not based on the fact alone that the defendant had failed to meet the child support terms of the divorce decree. The failure or nonfailure to comply with the terms of the decree would only amount to evidence of whether or not the accused had actually adequately provided for his child. For a decree might attempt to relieve the father of all obligation to support the child, but such a provision would not relieve such parent from criminal prosecution if he did not carry out his natural, moral and legal duty to support his minor offspring. See Edwards v. State, supra; State v. McMains, Okl.Cr., 241 P.2d 976; State v. Dobbins, supra; Owens v. State, 6 Okl.Cr. 110, 116 P. 345, 36 L.R.A.N.S., 633.

On the other hand, such decree might be too burdensome and beyond the means of the parent. There might be illness, unemployment, etc. There could be a number of things. But if so, the parent in an effort to show his good intent should present the facts to the court in an application for modification. To fail to do so would place such parent in the position of being in contempt of court. The within defendant had apparently been content to get an attorney to agree with him that he was unable to pay the $50 per month for his child, and he discontinued the entire payment without any attempt to get a hearing and obtain the sanction of the court in the divorce case. A modification decree would have been admissible in evidence in the within case on the question of intent.

This brings us to the consideration of the main ground urged for reversal of the within case. The testimony of the wife, Erna Bohannon, was not disputed in any particular, except that when defendant testified he showed that the wife and child lived in the house that she and defendant had purchased (and where the monthly mortgage payments amounted to $36.85) and that when the wife was paid $1,700 that she had put in the house, possession was to be given a purchaser. Defendant admitted that he had not provided anything

but shelter for the child since the first half of November, 1952, and had paid nothing for food, clothing or on the medicine or doctors' bills for the child. But he says as a defense that the evidence shows that his failure was not wilful, and that therefore the evidence does not support the verdict and judgment.

The evidence does show that prior to the divorce defendant drew around $300 per month as a mechanic, and although he worked for a different employer after the divorce, he was regularly employed. From defendant's testimony he received approximately $250 per month. He had a car that he maintained, although he lived within a very short walking distance of his work. While his mother lived with him, he admitted that she was drawing "old age compensation". The facts proven certainly presented the question as to whether the accused was negligent in his duty toward his child, and this court in Ex parte George, 63 Okl.Cr. 115, 73 P.2d 471, 472, Eighth syllabus, held:

"Guilty intent may be presumed from neglect of duty, and the crime continues so long as the negligence does not cease."

And in considering the meaning of the word "wilful" as applied to Section 853 of Title 21 O.S.1951, the child abandonment statute, in State v. McMains, supra, [241 P.2d 977] we said:

"As applied to this statute, the word 'willful' is the synonym of 'intentional', or 'designed', pursuant to intention or design without just (lawful) cause.

"The question of whether or not the defendant had abandoned his child and did willfully neglect or refuse to maintain or provide for such child was a question to be decided by the jury.

"The presumption of willfulness raised by proof of abandonment or failure to support a child is rebuttable."

And in the same case, at page 983 of 241 P.2d we said:

"The question of whether or not the defendant had abandoned his child and did willfully neglect or refuse to maintain or provide for such child was a question to be decided by the jury.

We stated in Ballard v. State [92 Okl.Cr. 420], 223 P.2d 782: 'In prosecution for abandonment of minor child, elements of wilfulness or neglect may be gathered from all circumstances and conditions involved in the case.' "

In Hutchman v. State, 61 Okl.Cr. 117, 66 P.2d 99, 100, we said:

"The words 'knowingly' and 'willfully' are of similar import. The allegation that one 'willfully committed the act' is the same as that he 'knowingly committed the act.' "

In connection with the question of the meaning of the word "wilfully" as it appears in the statutes involving child abandonment or failure to provide for a child, there is an interesting discussion in 39 Am.Jur., Parent and Child, § 107. We quote one paragraph as follows:

"Most statutes making the desertion or nonsupport of children a criminal offense expressly provide, or are construed to require, that the abandonment or desertion, or failure to support, be wilful, in order to constitute the offense. Some courts say that 'wilful' as used in these statutes, is said to imply a set purpose or design, and where it is requisite that the act or commission or omission, in order to constitute an offense, be wilfully done, the term 'wilfully' has been construed to mean that the act is done deliberately and intentionally, not by accident or inadvertence, but so that the mind of the person who does the act goes with it. * * * Even where wilfulness is essential to the offense, statutes or court decisions may authorize its inference from the fact of desertion, or of a neglect or refusal to provide support."

The meaning of the term "wilful" can be no different whether applied to Section 853 of Title 21 O.S.1951, the child desertion statute, or Section 852, the omitting to provide statute.

In the within case, the court advised the jury that "the undisputed evidence shows that the defendant did furnish shelter to his minor child and the only disputed

facts or evidence is whether or not the defendant wilfully failed to furnish the necessary food, clothing or medical attention."

The above instruction, together with the other instructions given, which instructions were not excepted to, properly submitted the issues to the jury, and by their verdict the jury found against the defendant. The evidence amply supports the verdict.

The argument that the court sentenced defendant "twice" cannot be sustained. The record discloses that the jury being unable to agree upon the punishment to be assessed, left that to the judge, who assessed punishment at confinement in the Kay County jail for one year, and to pay a fine of $200. That was the sentence. There was never but one judgment entered. But the court at the time of passing sentence offered to suspend it, if the defendant would resume the payment of $50 per month to his wife for child support, and pay $15 per month on the back payments. The court apparently took the view that the evidence supported the conclusion that $50 per month was required for the support of the child, and that in view of the large medical bill due and owing the defendant could not be relieved of the payment of the back payments. But the defendant simply stated that he would not do this, because he could not, and the court then withdrew this offer, which of course was a discretionary matter, and entered judgment without the suspended sentence provision. No right attached because of the trial court's offer to suspend the execution of the judgment pronounced. He could and did withdraw the offer when the defendant refused to accept the terms.

In an exhaustive opinion by Jones, J., in Ex parte Boyd, 73 Okl.Cr. 441, 122 P.2d 162, the statutory provision giving the trial courts authority to suspend sentences imposed is considered and the leading cases in various jurisdictions, including the Supreme Court of the United States, are reviewed.

By authority of the Boyd case, if the defendant had agreed to commence the payments of the child support money, and had failed to carry out his agreement, the court could have summarily revoked the suspension of sentence. Therefore he could certainly have revoked it where the defendant did not even propose to abide by the terms offered in an effort to get him to carry out his parental duty. The Boyd case should be read for enlightenment as to the power and duties of a court in this jurisdiction in the matter of the suspension of a sentence imposed.

Defendant's action was an indication that he would not carry out his obligations to his child, which of course if continuing would subject him to prosecution under Section 853 of Title 21 O.S.1951, a felony charge.

But here, counsel for defendant assert that the sentence imposed was excessive. With the view that the payment of the $200 fine would seriously handicap the defendant in providing for his son, and solely in the interest of the child, we feel inclined to exercise our power for modification of the sentence and strike the provision for the payment of a fine of $200, but do not feel justified in reducing the jail sentence. If defendant has a change of mind about supporting his son, and will put first things first, the Pardon and Parole Board, in the interest of the child, might grant defendant some relief, should he undertake his parental duty, not only imposed as a moral duty, but as a legal duty.

By reason of the record, the judgment of the county court of Kay County providing for imprisonment of the defendant in the county jail of Kay County is affirmed, but the judgment is modified to the extent of eliminating that part providing for a fine of $200.

As so modified, the judgment is affirmed.

JONES and BRETT, JJ., concur.