## SUPREME COURT — APPELLATE DIVISION — FOURTH DEPARTMENT.

. December 5, 1923. .

## THE PEOPLE EX REL. JOHN GOTTSCHALK v. CHARLES E. BROWN, SHERIFF.

(207 App. Div. 695.)

EXTRADITION—RELATOR, RESIDENT OF THIS STATE, WAS INDICTED IN OHIO FOR NON-SUPPORT OF HIS CHILDREN—WIFE LIVING IN OHIO HAD CUSTODY OF TWO CHILDREN UNDER DECREE OF DIVORCE—RELATOR VISITED OHIO DURING PERIOD COVERED BY INDICTMENT—VISITS WERE TEMPORARY AND FOR PURPOSE OF BRINGING CHILDREN TO NEW YORK—RELATOR NOT FUGITIVE FROM JUSTICE.

of the State of Ohio and subject to be returned to that State for trial
The relator, a resident of this State, is not a fugitive from just'ce on an indictment for the non-support of his two children, where it appears that his wife, who resides in Ohio, procured a judgment of d'vorce against him which confirmed an arrangement whereby the wife was to have the custody of two children and the relator the custody of the third with mutual visiting rights; that during the period which the indictment covers the relator was a resident of this State and that he was not present in the State of Ohio during that per'od except on two occasions of a few hours duration when he went there to bring his children to his home in this State.

Hubbs, P. J., and Sears, J., dissent.

Appeal by the relator, John Gottschalk, from an order of the Supreme Court, made at the Chautauqua Special Term

and entered in the office of the clerk of the county of Chautauqua on the 13th day of October, 1923, dismissing a writ of habeas corpus and remanding the relator to the custody of the sheriff of the county of Chautauqua.

*George A. Newbury,* for the appellant.

*Warner S. Rexford,* for the respondent.

DAVIS, J.:

John Gottschalk was taken into custody October 3, 1923, by the sheriff of Chautauqua county under an executive warrant issued by the Governor of this State on a requisition from the Governor of the State of Ohio.  A writ of habeas corpus granted on his petition was, after a hearing, dismissed.

The facts are not in dispute.  The relator was married in 1910 and three children were born of the marriage.  In October, 1922, a decree of divorce was granted to his wife in Ohio.  This decree evidently confirmed an arrangement made between the parties that the wife should have custody of two of the children, and the relator the custody of the other, and both were entitled to have the children visit them.  The decree is not printed in the record.  Gottschalk had lived practically all of his life in this State, and became a resident of Barcelona, Chautauqua county, August 10, 1922.  His wife continued to live in Ohio after the divorce was granted.

About January 1, 1923, differences arose between them concerning the custody of the children.  The relator as a result refused to pay thirty dollars a month for the support of the two children in the custody of the mother, as provided by the decree.  The differences continued and the wife made one or more journeys to this State to obtain possession of the children to which she was entitled, and the huband made two visits to Ohio to obtain and bring back the children on a visit, in pursuance of his alleged rights.

While the indictment is not contained in the record, it is admitted that the relator was indicted in the State of Ohio under a charge of non-support of his children from January 1, 1923, to June 14, 1923. The requisition by the Governor and the issuance of the warrant followed.

There is no disagreement between counsel as to the general principles of law applicable to this state of facts. Such requisition is authorized by subdivision 2 of section 2 of article 4 of the United States Constitution and by section 5278 of the United States Revised Statutes (U. S. Comp. Stat. § 10126; Barnes' Federal Code 1919, § 9633) where a person committing a crime in one State flees from justice and is found in another State. (Code Crim. Proc. § 827; McNichols v. Pease, 207 U. S. 100, 108.) Such person is a fugitive from justice only when he was actually within the demanding State at the time the crime was committed, as tated in the indictment, and there is no rule of constructive presence. (People ex rel. Corkran v. Hyatt, 172 N. Y. 176; affd., 188 U. S. 691; Innes v. Tobin, 240 id. 127; Ex parte Hoffstot, 180 Fed. Rep. 240; affd., 218 U. S. 665.)

The sole question at issue here is whether the casual journeys made by the relator into the State of Ohio constituted an actual presence there during the commission of the crime, and his subsequent departure was a flight.

If he was actually present in the State of Ohio and participated in the commission of a crime, even though the particular act did not of itself constitute all the elements of a crime, it is immaterial what his purpose was in departing from the State. He is legally a fugitive from justice, though his departure was not consciously a flight. (Appleyard v. Massachusetts, 203 U. S. 222, 227; Hogan v. O'Neill, 255 id. 52.) But the commission of a crime *malum in se* includes as elements thereof a criminal intent and an overt act. If the relator entered the State of Ohio with such intent and there committed

an overt act intended to be a material step toward accomplishing the crime, and then departed from the State and did the rest elsewhere, he became a fugitive from justice. (Strassheim v. Daily, 221 U. S. 280, 285.)

The question whether relator is a fugitive is one of fact. (Roberts v. Reilly, 116 U. S. 80.) The indictment charges relator with non-support of his children in Ohio between certain dates. During all that time the relator was a resident of this State. It is true that on the first Wednesday after Easter during this period he went to Ashtabula, O., by automobile, got two of his children and returned to his home, being absent about seven and one-half hours. On the second occasion, less than a week later, he went again to Ashtabula for one of the children and returned with him the same day, being absent from his home about the same length of time as before. His physical presence in the State of Ohio had nothing whatever to do with the crime of failing to support his children. Rather, it might be said the inferences are to the contrary.

To constitute one a fugitive from justice it is essential that he should in that State have incurred guilt. It is not enough that outside the State he committed criminal acts intended to produce and which did produce detrimental effects within it. (Ex parte Graham, 216 Fed. Rep. 812, 817.) In the case of a crime like conspiracy, presence in the demanding State of a person indicted as a conspirator during the period of the continuing conspiracy, makes the departure a flight from justice, where the impossibility of his participation in the conspiracy is not established. Even though his stay was but short, if his visit was to take part in certain overt acts, his application to be discharged on habeas corpus will be denied. (People ex rel. Ireland v. Woods, 177 App. Div. 1.)

Non-support is a crime based on continuous omission to perform a duty. Technically it is continuing each moment from its inception. The relator's visit to the State occurred within

the period during which he was charged with non-support, but it does not appear that during those visits he had a criminal intent or that he committed any overt and material act necessary for the accomplishment of the crime. (Strassheim v. Daily, supra.) If he brought his children to his home, it would indicate that he intended to support them, and that his intent and purpose in visiting Ohio were good rather than evil or criminal. The determination not to provide further support for his children had been made in this State. Nothing he did on the trips to Ohio aided or affected the commission of this crime. As to it he was merely passively present in the State while on another legitimate errand.

Acts wholly innocent in themselves and not intended as a step toward the accomplishment of a crime are not acts incurring guilt, and cannot be made the basis of a charge that the actor leaving the State flees from justice as there administered. (Taft v. Lord, 92 Conn. 539.) If while traveling by rail relator had passed during the night through a small portion of the State of Ohio asleep in his berth, it could hardly be said that his presence in that State, under those circumstances while refusing to support his children, made him a fugitive from justice so that he could be apprehended thereafter and returned to the State of Ohio for trial. Something more than physical presence is required.

We reach the conclusion that as a question of fact the relator was not a fugitive from justice; and the order dismising the writ should be reversed. This does not leave the wife and children remediless. Whatever claims they may have under the judgment of the Ohio court for their support and maintenance by the relator, may be enforced in the courts of this State.

The order should be reversed and the writ sustained, and the relator discharged from custody.

All concur, except HUBBS, P. J., and SEARS, J., who dissent.

Order reversed, writ sustained, and relator discharged from custody. The enforcement of the order herein, however, is hereby stayed, and the bond heretofore given is continued, pending a decision by the Court of Appeals if the respondent elects to appeal to that court and serves notice of such appeal within ten days after service of the order herein.