Ex parte SAM GEORGE.

No. A-9413. Nov. 5, 1937.
(73 P. 2d 471.)

116

Joe Adwon and James L. Gowdy, for petitioner.

Sam H. Lattimore, Asst. Atty. Gen., and E. W. Brown, Asst. Co. Atty., for respondent.

DOYLE, J. The petitioner avers that he is unlawfully restrained of his liberty by Stanley Rogers, sheriff of Oklahoma county, and Boone B. Arthur, extradition agent of the state of West Virginia; that the cause of said restraint is that petitioner was arrested and is detained under a charge of being a fugitive from justice. That on October 28, 1937, the Governor of the state of Oklahoma issued and delivered a warrant to the extradition agent of the state of West Virginia upon incomplete and insufficient application and that said papers show on their face that the alleged offense charged against petitioner is barred by the statute of limitations; that he is not a fugitive from justice from the state of West Vir-

ginia, and was not within the state of West Virginia during the period set forth in the indictment, and that his arrest and detention by said officers is therefore illegal and unauthorized; that application was made to the district court of Oklahoma county for a writ of habeas corpus on the same grounds as above set forth; that on a hearing had October 30th, the writ was denied and petitioner remanded to the custody of respondent.

Under copies duly authenticated and accompanying the requisition papers, it appears that in the common pleas court of Cabell county, state of West Virginia, at the October, 1937, term of said court, an indictment was returned charging that on the 1st day of August, 1937, in the said county of Cabell, and within one year next prior to the finding of this indictment, the petitioner, Sam George, did unlawfully and willfully and without just cause desert and willfully neglect and refuse to provide for the support and maintenance of his infant children, Rosalie, aged 14 years, Julius, aged 12 years, Emil, aged 10 years, Louis, aged 8 years, and Raymond, aged 6 years, the said infant children being then and there in destitute and necessitous circumstances.

Attached also is the affidavit of Mrs. Helen George, the mother of said infant children, in part as follows:

"That sometime in October, 1935, the said Sam George abandoned this affiant and the aforesaid children and absconded from the city of Huntington and the state of West Virginia and remained at whereabouts unknown to this affiant; that said abandonment was made at a time when this affiant and the said five infant children had no means of support whatsoever, and no property out of which to support themselves; that not until recently did this affiant learn of the whereabouts of the said Sam George, and that the said infant children, aforesaid, have been, since October, 1935, in destitute and necessitous

circumstances and without any support whatsoever except the support furnished them by the Family Welfare Society and the Union Mission, both of Cabell county, West Virginia, and with what meager earnings that this affiant can make, and that said earnings are wholly insufficient to sustain said infant children."

Also the affidavit of Louis Bokair, of Huntington, W. Va., to the same facts; also the affidavit of Katherine Ranson, investigator for the Family Welfare Society of Cabell County, W. Va., and that as a result thereof it has been necessary for the Family Welfare Society of Cabell county to assist them financially to prevent utter starvation and to clothe them.

Also the affidavit of Mrs. Lucille Downey, superintendent of the Union Mission, of Huntington, W. Va., to the effect that much of the time since October, 1935, the said infant children have been housed and cared for in the Union Mission as aforesaid, and that said children were and are in destitute and necessitous circumstances save for the assistance received from the Union Mission and other charitable organizations, meagerly supplemented by what earnings the mother, Mrs. Helen George, can supply.

It appears that the indictment was found upon the testimony of the aforesaid affidavits.

Petitioner testified that he had lived in Oklahoma City a little over a month, has a grocery store on Southeast Twenty-Ninth street, that he formerly lived in Huntington, W. Va., married Helen George there in 1922; had five children by her, ages 8 to 14; that he was in the confectionery business in Huntington for about 15 years; that in 1934 his business was taken over by his creditors; after that he peddled stuff around town to support his family; that October 17, 1935, he made arrangements to

leave Huntington, and went to Detroit, Mich., told his wife that he was leaving and gave her $150 or $175 that his cousin sent him, stayed in Detroit about ten days, went from there to Kansas City and stayed there about two weeks, and while there he sent his wife $10; that he went to Nevada and stayed there about ten months and while there procured a divorce from his wife; that he was separated from his wife about six months before he left Huntington; that he had never been back to the state of West Virginia since he left there October 17, 1935; that his present wife left Huntington, W. Va., about a year before he left there.

It is contended on the part of the petitioner that it conclusively appears that he was not a fugitive from justice from the state of West Virginia either at the time the indictment was returned against him or on the date of the alleged crime, and could not have committed the alleged crime in that state at that time.

Counsel for petitioner cite and rely upon the following cases: Schein v. Gallivan, 321 Mo. 268, 10 S. W. 2d 521; Ex parte Kuhns, 36 Nev. 487, 137 Pac. 83, 50 L. R. A. (N. S.) 507, and Ex parte Heath, 87 Mont. 370, 287 Pac. 636.

In the Schein Case, the Supreme Court of Missouri held:

"Petitioner leaving demanding state, following settlement of alimony then due, held not to be a fugitive from justice, since there was no criminal liability on petitioner's part at time he left such state, leaving no ground for presumption that he left with criminal intent, and in absence of such intent he cannot be held to be a fugitive from justice."

In Ex parte Kuhns, supra, the Supreme Court of Nevada held:

"Where a husband and wife residing in Pennsylvania agreed to separate and he agreed to make monthly payments for her support and that of a child of the marriage, and he made the monthly payments for a time and prior to any default left the state, and while residing in a sister state failed to make the payments, he was not guilty of abandoning his wife in Pennsylvania, he was not a fugitive from justice from Pennsylvania, based on his failure to maintain his wife and child, and he could not be extradited at the request of the authorities of Pennsylvania."

In Ex parte Heath, supra, it was held:

"Husband in state, though not county, wherein wife and minor child resided, after alleged day of desertion, held 'fugitive from justice' subject to extradition."

In the opinion it is said:

"The case of Ex parte Roberson, supra [38 Nev. 326, 149 Pac. 182, L. R. A. 1915E, 691], is relied upon by petitioner as sustaining his contention that he is not a fugitive from justice. But that case differs from this in that the crime there charged was not a continuing offense, as here. The court in that case made special reference to that fact by saying: 'The offense with which petitioner stands accused by the indictment found in Martin county, North Carolina, is not a continuing offense, nor one which might be termed transitory or ambulatory in its nature.'

"The cases of People v. Hyatt, 172 N. Y. 176, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706; People ex rel. Merklen v. Enright, 217 App. Div. 514, 217 N. Y. S. 288, and Farrell v. Hawley, 78 Conn. 150, 61 A. 502, 70 L. R. A. 686, 112 Am. St. Rep. 98, 3 Ann. Cas. 874, are cited and relied upon by petitioner as sustaining his contention. But these cases are not in point here, for there, too, the crimes charged were not continuing offenses.

"In State ex rel. Blake v. Doeppe, 7 W. Va. 203, 124 S. E. 667, the crime charged was a continuing one. There was no evidence, however, tending to show that the accused

was ever in the demanding state during the period covered by the complaint.

"The case of People ex. rel. Gottschalk v. Brown, 207 App. Div. 695, 201 N. Y. S. 862, cited by petitioner, supports his contention, but the decision was reversed in 237 N. Y. 483, 143 N. E. 653, 32 A. L. R. 1164, supra.

"We believe the decision in People v. Brown, 237 N. Y. 483, 143 N. E. 653, 32 A. L. R. 1164, is supported by sound reasoning, and on the authority of that case hold that petitioner is a fugitive from justice from the state of Kansas."

In the first instance the responsibility of determining whether an accused person is a fugitive from the justice of a demanding state rests upon the executive of the state in which the accused is found. Ex parte Reggel, 114 U. S. 642, 5 S. Ct. 1148, 29 L. Ed. 250.

Independent proof, apart from the requisition papers that the accused is a fugitive, need not be demanded by the Governor of the surrendering state before issuing his warrant of arrest in extradition proceedings. Pettibone v. Nichols, 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047.

The executive of the asylum state performs his full duty when he determines that an extraditable offense has been regularly charged, and that the accused was within the jurisdiction of the demanding state when the offense charged was committed.

In determination by the executive of the surrendering state, that the sworn evidence accompanying the requisition is sufficient to establish the facts upon which the requisition is based is not conclusive. The issuance of the warrant constitutes, however, a prima facie showing which may be rebutted under a writ of "habeas corpus by

admission or by other conclusive evidence." Hyatt v. New York, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657.

It is upon the petitioner under such circumstances to prove that he is not in fact a fugitive from justice, and the burden requires evidence which is practically conclusive. Ex parte Montgomery (D. C.) 244 F. 967; Roberts v. Reilly, 116 U. S. 80, 6 S. Ct. 291, 29 L. Ed. 544.

To be a "fugitive from justice" within the meaning of the federal law it is sufficient that such person legally charged in the demanding state with the commission of a crime within said state, when sought to be subjected to its criminal process for said offense, has left its jurisdiction and is found within the jurisdiction of another state upon whose executive requisition is made. When it is shown that a person is in due and legal form charged with a crime in one state, and that he was corporeally present in that state at the time of the commission of the crime charged, it is then conclusively established that such person is a fugitive from justice within the meaning of the Constitution. In re Gundy, 30 Okla. Cr. 390, 236 Pac. 440; Ex parte Baker, 33 Okla. Cr. 413, 244 Pac. 459; Ex parte Rabinwitz, 61 Okla. Cr. 83, 65 P. 2d 1236.

It is well settled that a person may be a fugitive from justice within the meaning of the provisions of the federal Constitution and laws concerning extradition, though at the time he left the demanding state he had no belief that he had violated its criminal laws, and though he did not consciously flee from justice in order to avoid prosecution for the crime with which he is charged. Appleyard v. Massachusetts, 203 U. S. 222, 27 S. Ct. 122, 51 L. Ed. 161, 7 Ann. Cas. 1076; Ex parte Foster, 60 Okla. Cr. 50, 61 P. 2d 37.

It is also a well-settled doctrine that a person who

departs from a jurisdiction, after having committed an act in furtherance of a crime subsequently consummated, is a fugitive from justice and subject to extradition. State v. Gerber, 111 Minn. 132, 126 N. W. 482; In re Cook (C.C.) 49 F. 833.

The Supreme Court of the United States, in the case of Strassheim v. Daily, 221 U. S. 280, 31 S. Ct. 558, 560, 55 L. Ed. 735, said:

"We think it plain that the criminal need not do within the state every act necessary to complete the crime. If he does there an overt act which is and is intended to be a material step toward accomplishing the crime, and then absents himself from the state and does the rest elsewhere, he becomes a fugitive from justice. * * * For all that is necessary to convert a criminal under the laws of a state into a fugitive from justice is that he should have left the state after having incurred guilt there * * * and his overt act becomes retrospectively guilty when the contemplated result ensues."

We are not advised of the provisions of the West Virginia Code of Criminal Procedure or statute of limitations. We do not take judicial notice thereof, and the common-law rule prevails.

The rule stated in 22 Cyc. 313, is:

"Where the common law rule has not been altered by statute, it is necessary to charge the offense as having been committed on a day certain; but except where the time is of the essence of the offense itself, it is sufficient to lay it on any day previous to the finding of the indictment, and during the period within which the offense may be prosecuted."

The charge in this case is that petitioner deserted his minor children on the 1st day of August, 1937, and prior thereto. The year given for the alleged offense in the copy of the indictment was evidently a clerical error and

should be 1936; however, this is not material, because under this allegation the state could prove the offense to have been committed at any time during the period covered by the statute of limitations, for the prosecution of the offense. 1 Bishop on Cr. Pro. 400; In re Quint, 54 N. D. 515, 209 N. W. 1006; State v. Gerber, supra.

The willful and unexcusable failure of a father to provide for the support of his minor children is a continuing offense, which a father commits every day that he fails to provide for the support of his minor children.

It follows that the precise date named in the indictment is not material, for the state may prove the offense to have been committed at a time when petitioner was within that state.

The constitutional provision regarding extradition from one state to another was adopted to promote justice, to aid the states in enforcing their laws, and not to shield malefactors. The Supreme Court of the United States has emphatically announced its adherence to the doctrine that a faithful and vigorous enforcement of the provisions relating to fugitives from justice is vital to the harmony and welfare of the state, and that, while a state should take care that the rights of its people are protected against illegal action, both it and the judicial authorities throughout the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted, as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state. People ex rel. v. Enright, 112 Misc. 568, 184 N. Y. S. 248.

The action of the Governor in issuing his warrant should not be nullified by the courts, unless it conclusively appears that the accused is not a fugitive from justice

and that the issuance of the warrant was in plain contravention of law. Ex parte Foster, supra.

Upon a careful examination and consideration of the record before us, we are clearly of the opinion that upon the undisputed facts petitioner is a fugitive from justice from the demanding state and his arrest and detention are not in any way illegal.

The writ is therefore discharged, and it is ordered that petitioner forthwith surrender himself to the sheriff of Oklahoma county to be delivered into the custody of the duly appointed agent of the state of West Virginia for return to that state; that upon compliance with this order the bond given for his release pending this decision be exonerated.

DAVENPORT, P. J., and BAREFOOT, J., concur.