## STATE v. McMAINS.

No. A-11561. March 5, 1952.

(241 P. 2d 976.)

Mac Q. Williamson, Atty. Gen., and J. M. Springer, Co. Atty., Nowata County, Nowata, for plaintiff in error.

Lloyd C. Colter, Nowata, for defendant in error.

POWELL, J. In this case the state has appealed upon a reserved question of law, as provided by Tit. 22 O. S. A. § 1053, subsec. 3. Appeals being of statutory origin, an appeal by the State cannot be taken in any case, except as enumerated in the above statute. We shall refer to the plaintiff in error as the state, and the defendant in error as defendant.

The pertinent part of the information filed against defendant alleges:

"That on or about the 1st day of March, 1950, the defendant wilfully and feloniously, without good cause or excuse, did abandon his minor child under the age of 15 years, to-wit: Connie Sue McMains, one year of age, in destitute and necessitous circumstances."

The record discloses that the case was tried in the district court of Nowata county on the 4th day of October, 1950. The jury returned a verdict of not guilty, and the defendant has been discharged. The answer to the questions raised, therefore, cannot affect the defendant as to this particular case, but may be of value for future reference.

The statutory provision on which the prosecution was based is Tit. 21 O. S. A. § 853, Laws 1915, ch. 149, § 1; Laws 1923, ch. 78, p. 144, §2, reading:

"Every person who shall without good cause abandon his wife in destitute or necessitous circumstances and neglect and refuse to maintain or provide for her, or who shall abandon his or her minor child or children under the age of fifteen years and wilfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a felony and upon conviction thereof, shall be punished by imprisonment in the State penitentiary for any period of time not less than one year or more than ten years." (Emphasis added.)

Section 855 of the Act, Tit. 21 O. S. 1951, contains a provision whereby the warden shall put a person convicted under the Act to work within the penitentiary at $2.50 per day, the sum earned to be paid to the wife, or other proper person, for support of the minor. Also the Act provides that a person convicted under the Act may be by the Governor paroled, providing he enters into an undertaking with sureties, to pay to the court clerk of the county where charged, prior to the 10th day of each month, a sum of money to be fixed by the court for the support of the child. The above section should be referred to for details. The Act, conscientiously enforced, would certainly aid the Welfare Agencies solve many perplexing problems.

The two questions presented by the state for the consideration of this court are:

(1)   That the court erred by admitting incompetent, irrelevant and wholly immaterial testimony offered by the defendant and objected to by the State.

(2)   That the court erred in its instructions to the jury.

It is well to note that the above Act, first adopted in 1915 and later modified, came about by reason of a nation-wide attempt to have adopted by the various states a uniform desertion and nonsupport act.   Commencing in 1911, 29 states have up to now adopted the model act, either in whole or in part, and the various provisions have by now been interpreted, though the uniform act, as such, has not always been mentioned, probably by reason of the frequent modifications, and the interpretations within the various jurisdictions adopting the uniform act have in many cases been independent and without apparent consideration of the interpretation in the various other states with similar or modified statutory provisions.   See Uniform Laws Annotated, Vol. 10, with pocket parts.

The purpose of the Act, of course, was to compel the husband, if able to do so, to support his wife and children.   Cosby v. State, 85 Okla. Cr. 159, 186 P. 2d 844.   And this age-old problem has become more acute since the welfare agencies have had Federal funds to provide for deserted families.   Too often the husbands, lacking in pride or love, rather than physical strength, have sought by following the easy but degrading and contemptible path of desertion to thereby compel the tax-paying public to support their families.   There have even been cases where there was collusion between the husband and wife to bring this about.   This makes imperative the alertness of state and county officials in the enforcement of, and emphasizes the need for, penal laws adopted to discourage such practices.   In fact, Section 854 of the Title makes it the mandatory duty of each county attorney of the state to diligently prosecute all persons violating any of the provisions of the Chapter (Chap. 31, Tit. 21, O. S. 1951), and making any county attorney failing or refusing to enforce the Act subject to removal from office.

A derelict husband and father may be proceeded against by various civil actions to compel him to perform his duties to his family.   But where he is a person without estate or honor, he may flee the jurisdiction of the court.   And while in a divorce proceeding his failure to carry out the order of the court requiring him to support his child or children would place him in contempt of court, in this jurisdiction such act constitutes only a misdemeanor (see Tit. 21 O. S. 1951 § 565, and Tit. 21 § 10), and for such reason a requisition for his return from another state might not be honored, if it should develop that such state had not adopted the Uniform Criminal Extradition Act, adopted by this State in 1949.   Tit. 22 O. S. 1951 §§ 1141.1-1141.30.   See, also, Tit. 12 O. S. 1951 §§ 1601-1610.   Therefore, the civil remedies have been found inadequate and insufficient in many cases, and hence the criminal act here involved, which is independent of and in addition to any civil remedies, and providing a greater penalty.

The case of Dyer v. State, 58 Okla. Cr. 317, 52 P. 2d 1080, 1081, is one in which the defendant was prosecuted under the above quoted Act for child abandonment.   In that case Judge Doyle for the court, stated the facts as follows:

"They were married in 1925.   A child was born to them, this daughter, Laura Belle.   That the prosecuting witness has supported their child from her salary as a school teacher.   On July 29, 1933, she obtained a divorce from him, which was granted on the ground of gross neglect of duty in that he failed to provide for her support and for the support of their daughter, seven years old; and by the decree the sole custody of the child was awarded to her,

but it was silent as to the support and maintenance of the child. The decree shows that the defendant had abandoned his minor child. It appears that he had contributed nothing for the support of the child except $45 contributed after this prosecution was instituted; however, the child had received some small gifts of money from his stepfather and an aunt of the defendant. On December 30, 1933, he married another woman.

"As a witness in his own behalf, the defendant testified that he lives at Caldwell, Tex. Was married to the prosecuting witness in El Reno, and lived with her and their child for two or three years with his folks at Bristow. His wife then secured a divorce. They were remarried at Oklahoma City a year or two later; that he was living at Caldwell when his wife secured this divorce. That when his wife was not teaching school in Oklahoma City, she and their child lived with his mother at Bristow. That he never had any money to send to his child, and did not send his wife any money. That since the 6th day of July, 1934, he has been receiving $50 a month and expenses, working for the Mid-Tex Oil Company. That his present wife has a farm and she supports herself. That while visiting in Oklahoma City he was arrested on this charge."

In the Dyer case the defendant's principal contention for reversal was that:

"The divorce decree gave the prosecuting witness exclusive custody of the child **and thereby relieved the defendant of any liability for the support of the child until a modification of the decree,** and the defendant cannot legally be prosecuted for the failure to perform an act which by statute he had been exempted from performing." (Emphasis added.)

Counsel in the Dyer case cited two sections of the statute now cited as Tit. 12 O. S. 1951 § 1277, and Tit. 10 O. S. 1951 § 4. The first section being in effect that a court in rendering judgment dissolving marriage shall make provision for support of the child or children of the marriage. The court failed to do so in the decree, but did provide that the wife should have exclusive custody of the child.

The second section above cited provided:

**"The parent entitled to the custody of a child must give him support and education suitable to his circumstances.** If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability." (Emphasis added.)

Defendant therefore contended that he could not be prosecuted criminally, and he cited cases from other jurisdictions to support his position, and cases pro and con are reviewed by Judge Doyle; and this court held:

"A divorce decree, awarding custody of a minor child to the mother, does not destroy the relation between the father and his child. As to the child, his legal obligation remains the same. The divorce did not release him from any pre-existing natural, moral, or legal duty to support and educate and to provide for the future support of such child."

In the body of the opinion it was said:

"The child, helpless in extreme infancy and required in the maturer years of its minority to obey the reciprocal duty of serving its parents, is not to be deprived of its natural and legal right of protection and support by its father, because of any family quarrel or of any agreement between husband and wife. It is not a party to divorce proceedings. **It is not barred as to its rights by any decree therein."** (Emphasis added.)

The Dyer case was reaffirmed by Cowley v. State, 65 Okla. Cr. 479, 88 P. 2d 914, 915. In that case the divorce was granted in Stephens county and the defendant was ordered to pay to the wife, who was granted the care and custody

of the children, the sum of $15 per month, which the evidence disclosed he had failed to pay. As a defense defendant claimed that the district court of Oklahoma county, where the criminal action was filed, did not have jurisdiction by reason of the divorce action in Stephens county. It was the theory of the state that the divorce did not relieve defendant of any pre-existing natural, moral or legal duty to support and educate and to provide for the future support of such child. The case was affirmed by this court, and in the fifth paragraph of the syllabus we said:

"The primary obligation on the part of the father to support his child is not taken away by O. S. 1931, § 1684 [Tit.], 10 Okla. St. Ann. § 4, relating to the duty of both parents to support and educate their children."

Cases from other states involving the jurisdiction of a court where criminal action had been filed against a divorced father for non-support of minor children, recommended for study, are: State v. Francis, 126 Or. 253, 269 P. 878; State v. Yocum, 182 Ind. 478, 106 N. E. 705; Huff v. Merchants Parcel Delivery Co., Inc., 106 Ind. App. 110, 18 N. E. 2d 471; and see Annotation in 146 A. L. R. 1153; also State v. Worthington, 227 Ala. 204, 149 So. 709, 712. In the latter case the court said:

"Our judgment now is that because a court of chancery may have power to declare and enforce the duty of the father to his children, the state was not deprived of its police power to punish such neglectful father, when the failure on his part exists willfully, and without legal excuse, and the children are in destitution."

Exploring the facts in the within case, the evidence discloses that the defendant was married to Bobbie Ann McMains on February 7, 1949, and thereafter and on April 5, 1949, there was born to the parties a daughter, Connie Sue McMains. The defendant on September 29, 1949, filed in the district court of Nowata county a petition for divorce (though in the within case the wife testified she and defendant actually lived together until in February, 1950), and on February 17, 1950, was by the court granted a divorce. The decree contained the unusual provision:

"It is further ordered, adjudged and decreed that the care, custody and education of Connie Sue McMains, minor child of the parties, be confided to the defendant, and that the plaintiff be not required to pay any support money for said child, subject to the further order of this court."

It will at once be noted in the within case that not only was the child confided to the wife, but the decree specifically provided that the husband was not required to pay any support money for said child. And though not said in so many words, the import from reading the provision was that the wife should support the child until the further order of the court. The decree was thus different in such respect from the cases we have just cited above, and we have been unable to find a case with facts similar to the facts in the within case. However, from what we have said in the Dyer and Cowley cases, so far as concerns a criminal case where a divorced husband is prosecuted for abandonment and failure to support his minor child, the criminal responsibility must be grounded on the father's willful failure to support. The decree in the divorce case would not control in the criminal case, and in many cases might be immaterial altogether. Certainly the evidence to support the decree could not be rehashed in a criminal prosecution, and the trial court was, in our judgment, correct in excluding such evidence. It must be kept in mind that, as this court has often said, the father's duty to the child is a continuing duty. However, changed conditions may affect that duty.

It will be noted that the defendant is charged with deserting his child some twelve days after the divorce from his wife was granted and the heretofore quoted provision in the decree entered. Defendant's defense interposed in the within case revolves around the quoted provision in the decree of divorce.

The state herein offered Mrs. Bobbie McMains as a witness and she testified that she had married defendant on February 2, 1949; that she was divorced from defendant in February 1950, but prior thereto Connie Sue McMains was born; that after the divorce and after she caused the within action to be filed, and on May 4, 1950, she had twins born to her by defendant. She stated that after she first separated from defendant "We went together, back together several times to try and make it, but we couldn't make it, so we had to finally quit." She further stated that they finally quit in February, 1950. Witness testified the defendant had not contributed anything to the support of their daughter since the divorce.

On cross-examination it was developed that the divorce was granted the husband on February 17, 1950, by reason of gross neglect and extreme cruelty charged against the wife. The wife testified that after the divorce the husband would come down on Sundays to visit Susie. She was asked by the defense attorney: "When he came down to visit Susie, did you ever suggest to him he furnish any money for the support of the child?" The court sustained the state's objection to the question on the theory that the burden was on the defendant to show that he had supported the child. Witness was then asked: "Did you ever at any time tell him that you or the child were in needful circumstances?" The court sustained an objection of the county attorney to this question as being immaterial.

The prosecution called a number of additional witnesses and developed that after the wife was divorced from the defendant, she and her child lived with W. S. Meredith, the wife's grandfather, and that he and the Welfare Department had been taking care of the wife and child following the divorce. It was further shown by the witnesses that defendant was a healthy man, able-bodied and not incapacitated for work. The state rested.

It was the theory of the defense that in view of the support and custody clause alleged to be in the decree of divorce, that in the absence of some demand or notice from his ex-wife, who was awarded the care and custody of the daughter of the parties, for funds and notice that the child was in need, and either that she could not or would not abide by the decree and support the child, that such clause in the divorce decree impliedly requiring the wife to support the child until the further order of the court, absolved him from any charge of abandonment or of willful neglect and failure to support.

But it was the theory of the state at trial, and is here, that as a matter of law the court in the divorce action could not legally render a judgment which would relieve the father from support of his minor child, and that the above provision in the decree was and is void, and therefore in the within action all the testimony and exhibits introduced in evidence relative to the divorce proceedings was incompetent and irrelevant for any purpose.

The trial court, after the state had rested, excused the jury and listened to defendant's counsel state his proposed defense, and listened to arguments by the attorneys, neither of whom seem to have presented any authorities to the court. The court permitted counsel in his statement to the jury to refer to the clause in the divorce decree absolving him from the support of his minor child.

E. J. Deater, court clerk of Nowata county, was the first defense witness, and identified the appearance docket record of case No. D-60, Floyd Eugene McMains v. Bobbie Ann McMains, Book D-1, and that such persons were the same persons as the prosecuting witness and defendant in the within case, and the court permitted the record to be introduced in evidence over the objection of the state. The court refused to receive the petition for divorce in evidence, and refused to receive any portion of the divorce decree in evidence except that paragraph providing for the custody and support of the minor child, Connie Sue McMains. The clause in question has already been quoted above. The court refused to have admitted in evidence the purported verified waiver of issuance and service of summons claimed to have been executed by the wife in the divorce proceedings.

The defendant testified in his own behalf, stating that he had been married to Bobbie McMains and that Connie Sue McMains was their daughter and was about a year and four months old at the time of trial; that he and his wife were granted a decree of divorce by the district court of Nowata county on February 17, 1950; that he was the plaintiff in the action and that he had not paid child support money to his ex-wife; that he had never refused to, but that neither his wife nor anyone else had requested him to; that the divorce decree provided that the wife was to have custody of the child and that defendant was not to pay support money for the child until the further order of the court. Witness denied trying to evade supporting the child and claimed that he was ready and willing to support the child, as well as the twins born after the divorce.

On cross examination by the county attorney, defendant denied ever telling his wife that he would not support their daughter, admitted that he had earned $200 since the divorce (February 17 to October 4), stated that he had during the period paid his wife $25 out of this; that it took about $3 per day to live on; that he earned $5 per day when working and had been working on the construction of a bridge near Watonga. He claimed that he was on good terms with his wife right up to the time of his arrest.

Bobbie McMains testified in rebuttal, stating that she signed a verified waiver in the divorce case and did not contend for child support money because:

"He [defendant] told me that if I went up there and asked for Susie he wouldn't pay me any money. I mean, he wouldn't pay me any money if I went up there. He threatened to take Susie away from me, so I was scared to ask for money."

Defendant's attorney then wanted to call as a witness the attorney who obtained the divorce, to show the facts concerning the inclusion of the clause in the the divorce decree and testified about by the wife. The court refused to hear the witness, and struck from the consideration of the jury the rebuttal testimony of Bobbie McMains.

Considering the contention of the appellant that the provision in the divorce decree admitted in evidence in the within action was void, we answer that it must be assumed in a collateral matter, particularly by a court having no jurisdiction in civil actions, that the trial court in the divorce case in question had authority and that there was evidence that justified its including in the decree the provision now claimed to be void. We have no jurisdiction here to review that question. Further, we call attention to Tit. 12 O. S. 1951 § 1277, no doubt relied on by the court in the divorce action as authority for the provision attempted here to be questioned. We can visualize a number of fact situations that would justify a court in a civil action in placing the duty of

child support on the mother, that ordinarily is by statute, Tit. 10 O. S. 1951 § 4, a primary duty of the father. Such a case would be where the father was disabled and without means to support the child or children and where the mother on the other hand did have means to support such child or children. See the case of Chambers v. Chambers Estate, 202 Okla. 412, 214 P. 2d 901, a case where a father was allowed to use funds of his incompetent wife to support their children. We shall assume that as to the divorce action mentioned that any time the mother would file application seeking modification of such decree, alleging and showing changed conditions and that the husband was able to support the child, the decree would be modified. As stated by the trial judge, as a practical matter that is what should have been done prior to the filing of the within case. It may be that the clause exempting the father from supporting the daughter was inadvertently by the court included in the divorce decree. We do not know.

It should be clearly understood that here we are interested in the decree in question, not for the purpose of review, or whether the judgment was void or voidable, but only for the purpose of determining whether or not it could have any bearing from an evidentiary standpoint on the guilt or innocence of the defendant of the crime here charged in an independent action by the state. That is, whether it could have a bearing on the question of "abandonment" or whether the acts charged were "willful". To support the charge, it was incumbent on the state to show that the child was abandoned by the father, and that he willfully neglected or refused to provide for such child. Tit. 21 O. S. 1951 § 853; Williams v. State, 62 Okla. Cr. 298, 71 P. 2d 496; Dyer v. State, supra.

Alabama and Texas have adopted the Uniform Desertion and Non-Support Act, with some modifications, and have defined the term "willful" as applied to this statute. In the case of Mercardo v. State, 86 Tex. Cr. R. 559, 218 S. W. 491, 8 A. L. R. 1312, and cited with approval in Glazener v. State, 117 Tex. Cr. R. 605, 36 S. W. 2d 752, and Hardin v. State, 124 Tex. Cr. R. 237, 61 S. W. 2d 1002, 1003, the court said:

"The term 'willful' has been often defined by our courts, and as applied to this statute we think means not only with evil intent and malice, but that it also implies a set purpose and design."

In St. John v. State, 22 Ala. App. 115, 113 So. 321, 323, the court said, as applied to this statute:

" * * * the word 'willful' is the synonym of 'intentional', or 'designed,' pursuant to intention or design, without just (lawful) cause."

It is true that this court has said in Ex parte George, 63 Okla. Cr. 115, 73 P. 2d 471, 472, that:

"Guilty intent may be presumed from neglect of duty, and the crime continues so long as the negligence does not cease."

But we have also said that:

"Where one is on trial charged with an offense the commission of which requires a specific intent, the accused as a witness may rebut or explain his intent, and the exclusion of his testimony on this point is prejudicial error." Smith v. State, 38 Okla. Cr. 416, 262 P. 507, and cases cited.

Further, we approve the statement by the court in State v. Tucker, 151 Wash. 218, 275 P. 558; Uniform Laws, Ann. 1951, p. 39, where it is said:

"The presumption of wilfulness raised by proof of the abandonment or failure to support a child is rebuttable."

The question of whether or not the defendant had abandoned his child and did willfully neglect or refuse to maintain or provide for such child was a question to be decided by the jury. We stated in Ballard v. State, 92 Okla. Cr. 420, 223 P. 2d 782:

"In prosecution for abandonment of minor child, elements of wilfulness or neglect may be gathered from all circumstances and conditions involved in the case."

And, of course, the converse would be true.

Regardless of the legal effect of the provision in the divorce decree already quoted, the question is, did defendant in good faith rely on it? He swore that he did. Although admitting that he had not provided for his child, he recognized his duty, and expressed his willingness to support and stated that he expected the court to change the provision after a time. Although the wife testified that he would visit the daughter on Sundays after the decree of February 17, defendant testified that she had never asked him for support money for the child, or indicated need. Under the facts and applying the principle of law above quoted, we conclude that the trial court did not err in admitting in evidence the divorce decree clause with reference to the custody and support of the minor child.

Of course, there were many factors weighing heavily against the defendant, and disclosed by the evidence, and if the jury had resolved the issues against the defendant, the record would have supported that verdict.

We now come to the final question submitted by the state.

Counsel for the state say:

"We next complain of the court's instruction (No. 7). It is misleading and uncomprehensible and so confusing that no jury could understand what the court meant. And for the further reason the court is without authority to instruct the jury, however vague, in such a way as to relieve the parent from the support of his minor child."

The instruction complained of is instruction No. 7, reading:

"Gentlemen, in this connection and bearing solely and only upon the point whether or not the defendant's non-support of his minor child was willful, there has been introduced in evidence the decree of divorce in which decree there is provided: 'It is further ordered, adjudged and decreed that the care, custody and education of Connie Sue McMains, minor child of the parties, be confided to the defendant' —that would be the mother—'and that the plaintiff be not required to pay support money for said child, subject to the further order of this court.'

"The point is, gentlemen, that this order in the divorce action does not absolve, as a matter of law, this defendant in this case now being heard from the necessity, the obligation, the liability to support his child. That stays with him.

"Now, whether or not this defendant willfully failed, refused and neglected to support this child is a question for you to decide. And bearing upon that point of willfulness, and only upon that point of willfulness, is this provision of the decree."

In addition to instruction No. 7, after the attorneys argued the case, the court verbally sought to further explain the instruction to the jury, in view of the contentions of the attorneys in their arguments as to what was meant. Counsel in his brief has not complained about the further statement of the court to the jury on the subject. The court, of course, was attempting to carry

out his duty and define the law applicable to defendant's theory and covering his defense, which, as stated, revolved around the clause in the divorce decree already discussed. We have considered the instructions as a whole, and have determined that they fairly and correctly state the applicable law, and are sufficient when so considered. Just a little careful effort prior to the filing of the within charge against the defendant would have either resulted in his discharging his duty to his child, or would have deprived him of the defense interposed.

We consider that the trial court did not err in the admission of the evidence and exhibits complained of, and in his instructions to the jury when considered as a whole.

Reserved questions answered.

BRETT, P. J., and JONES, J., concur.