## DEO v. STATE.
### No. A-11981.

Criminal Court of Appeals of Oklahoma.

June 23, 1954.

H. B. Parris, Eufaula, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Billy Deo, plaintiff in error, hereinafter referred to as defendant, was charged by information filed in the district court of McIntosh County, with the crime of abandonment of a minor child, as provided by Tit. 21 O.S.1951 § 853; was tried before a jury found guilty, but being unable to agree upon the punishment to be assessed left the same to the court, who fixed his punishment at confinement in the penitentiary at Mc-Alester for two years.

The basis for appeal is the contention that the evidence in the case failed to establish the marriage relationship. A common law marriage was claimed. The parties involved were shown to be full-blood Creek Indians.

Counsel for defendant points out that tribal or Indian-custom marriages have not been recognized in Oklahoma since the dissolution of tribal government or the advent of Statehood. There is no question but that this is a correct statement. Proctor v. Foster, 107 Okl. 95, 230 P. 753; McFarland v. Harned, 115 Okl. 291, 243 P. 141; Unussee v. McKinney, 133 Okl. 40, 270 P. 1096. But it was not claimed that the marriage relationship commenced prior to statehood.

Section 854, Tit. 21 O.S.1951, provides:

"No other evidence shall be required to prove marriage of such husband and wife, or that such person is the lawful father or mother of such child or children than is or shall be required to prove such fact in a civil action, and such wife shall be a competent witness to testify in any case brought under this Act, and to any and all matters relevant thereto, including the fact of such marriage and the parentage of such child or children. It shall be the mandatory duty of each County Attorney of this State to diligently prosecute all persons violating any of the provisions of this Chapter (Chapter 31, Title 21 O.S. 1951), and in all cases where the evidence is deemed sufficient to justify a prosecution for such violation, any County Attorney who shall wilfully fail, neglect or refuse to institute criminal proceedings to enforce such provisions, shall be subject to removal from office."

It is urged that in construing Section 853 of Title 21 O.S.1951, known as the failure to support statute, this court held, State v. Boston, 69 Okl.Cr. 307, 102 P.2d 889, that such statute applied to legitimate children only, that the same construction would apply to Section 852 of said Title, under which the present prosecution was instituted, and that unless Clarence Edward Deo was legitimate, the prosecution must fail. We think this position correct. So the problem presented is the determination of whether or not the State produced sufficient evidence to establish a common law marriage between the complaining witness, Sarah Spaniard, and the defendant, Billy Deo.

Sarah Spaniard testified that she and Billy Deo were married June 24, 1946; that Billy Deo took her to live with him at his mother's south of Hanna in McIntosh County; that the marriage was a common law marriage; that they lived at his mother's as husband and wife for about a year and a half; that a son was born to them, Clarence Edward Deo, on March 9, 1949. She stated that Billy Deo after their marriage provided for her, but finally left her, and she went to live with her own mother who helped her and the child, and finally the welfare board helped her take care of the child; that Billy Deo refused to provide for the child, and that she had not been divorced by Billy Deo.

On cross-examination witness stated that Billy Deo denied being the father of the child. She testified that defendant told her that he was leaving to get work, but he never came back, so she finally moved to her mother's. Witness further stated that before Billy Deo left her, that they visited around together, that they stayed together at her own mother's home, and that she told her acquaintances that she was Billy's wife, and that Billy also: "He tell lots of people."

Otis Tiger, a neighbor of Sarah Spaniard and Billy Deo, testified that he knew the parties when they lived at the home of Billy's mother at Hanna, and that he knew them well, and he stated that he knew them as married.

Sarah Tiger, who lived in Hanna, knew that Sarah Spaniard and Billy Deo were living together and saw them in town together frequently, but never heard either say whether they were married or not.

Mrs. Bernice Dunaway, county director of public welfare, stated that Sarah Spaniard was certified for aid in February, 1949, it having been determined that she had no other means for aid in supporting her child.

On re-direct examination Sarah Spaniard testified that Billy Deo left her about eight months before her child was born. She stated that during her marriage to Billy Deo that she charged groceries at Mouser & Golf Grocery, Hanna, to him as her husband, and he paid the bills. She swore positively that Billy Deo was the father of her child.

The testimony of the claimed wife of Billy Deo and the claimed mother of his son stands unrefuted. The defendant did not testify and offered no evidence. Was the evidence sufficient to establish a common law marriage between the parties? An interpreter had to be used in questioning the complaining witness, as well as the other full-blood Indian witnesses. There was difficulty in explaining the questions asked. The evidence is not as clear and convincing as might be expected from persons of education and who could clearly speak the English language.

In the case of Tiuna v. Willmott, 162 Okl. 42, 19 P.2d 145, also a case where full-blood Creek Indians were involved, the Supreme Court of Oklahoma was faced with a record of testimony of full-blood Indians much as here. The problem was a determination of the legitimacy of an alleged child and heir of David Tiuna, deceased. The lower court held against the contention of a common law marriage between Rosanna Tiuna, the mother of Winey Tiuna, and David Tiuna, but the Supreme Court reversed the lower court, and there held:

"The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and the stability of descent and distribution, and therefore presumes innocence and virtue in the absence of proof to the contrary."

In the body of the opinion, the court said:

"In Mudd v. Perry, 108 Okl. 168, 235 P. 479, 483, this court said: 'Frequently in discussing common-law marriages, the courts have injected confusion as to what was necessary to constitute the relation. The confusion has arisen, however, by not clearly distinguishing between what is to be established and the method of establishing it. In all matters of marriage at common law, the question to be reached is whether or not there was a contract between the man and the woman to be husband and wife, not in the future, but in the present'—citing with approval Hulett v. Carey, 66 Minn. 327, 69

N.W. 31, 34 L.R.A. 384, 61 Am.St.Rep. 419.

"The court then said: 'In the absence of convincing evidence direct in its nature, as to such an agreement, and for the purpose of reaching the conclusion that such an agreement or meeting of minds actually existed between the parties, facts and circumstances might be introduced in evidence, such as the conduct of the parties, the manner each was held out by the other to the public, the relation they sustained to each other, etc.; but this character of evidence is only for the purpose of giving rise to the implication that the contract of marriage actually existed between the parties.'"

The court further said:

"In Re Sanders' Estate (Sanders v. Sanders), 67 Okl. 3, 168 P. 197, this court held that 'The law is astute to preserve the sanctity of the marriage relation, the legitimacy of children, and the stability of descent and distribution, and therefore presumes innocence and virtue in the absence of proof to the contrary'; and that 'It is the duty of courts to regard with jealous care the interests of minors in actions involving their rights. No presumption can be permitted against an infant, but, on the contrary, every presumption must be indulged in his favor, and a guardian ad litem or other person representing such minor must see to it that every question available is urged on behalf of said minor, and in case of a failure to discharge this duty, it becomes the imperative duty of the court to see that the infant's rights are protected.'

"In the same case upon the question of common-law marriage we declared the rule of law to be that: 'A common-law marriage may exist in this state, and when parties capable of entering into the marital relation agree to be and become husband and wife, and in pursuance of such agreement enter into and thereafter maintain the marriage relation, a common-law marriage exists.'"

Taking into consideration the positive testimony of the prosecuting witness that she entered into a marriage agreement with Billy Deo on a day certain, June 24, 1946, and in pursuance thereof went with him to the home of his mother, where she lived as his wife, charged all groceries to him, and that he paid the bills, and that as a result of said marriage a child was born, and that both told others they were married, this court while not overlooking the fact that such testimony and supporting testimony offered was not as strong as seemingly it might have been from the relationship actually shown, still must find that such evidence is convincing and direct in its nature as to the agreement of marriage, and, standing uncontradicted, we must hold sufficient to make out a prima facie case. The defendant offered no evidence in contradiction.

Therefore, the judgment of the district court of McIntosh County must be, and the same is affirmed.

JONES and BRETT, JJ., concur.