George Dean BINGHAM, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–16219.

Court of Criminal Appeals of Oklahoma.

Sept. 3, 1971.

John Board, Guymon, for plaintiff in er-
ror.

Larry Derryberry, Atty. Gen., for de-
fendant in error.

BUSSEY, Presiding Judge.

George Dean Bingham, hereinafter re-
ferred to as defendant, was charged, tried,
and convicted in the District Court of Tex-
as County for the offense of Child Aban-
donment; his punishment was fixed at
three (3) years imprisonment, and from
said judgment and sentence, a timely ap-
peal has been perfected to this Court.

Briefly stated, the evidence at the trial
adduced that on September 29, 1969, Gladys
Bingham lived in Guymon, Oklahoma.
She testified that she entered into a com-
mon law marriage relationship with the de-
fendant in September, 1960, and lived with
him until the summer of 1966. Two chil-
dren were born of this marriage, Minnie
Louise Bingham, age seven, and one child
who died. The defendant gave the daugh-
ter a total of approximately $35.00, and
had given Gladys Bingham $15.00 since the
separation in 1966. She worked to support
the child until she became ill, and applied
for assistance from the Department of
Welfare.

She saw the defendant several times
during the period of separation and asked
for support, and he agreed to give money
to the child. He had bought a welding
truck and was going to work on it. She
testified that as far as she knew, the de-
fendant was in good health, with the ex-
ception of one time when he was in the
hospital. He supported her and the child
when they were living together. She left

him in 1966, because of his excessive drinking. He continually accused her of killing the deceased child, and she said he "kicked us around." She contacted an attorney about obtaining a divorce, and was paying him an amount each month to file the case.

She testified on cross-examination that she goes under the name of Mrs. Bingham. She admitted that she and the defendant were never officially married. She denied living with any other person during the six years with the defendant. She lived with one Don Stastii for a week after leaving the defendant. She left the defendant one other time, but they were reunited after two or three weeks. She admitted that the defendant had been in jail several times since 1966, and that he had a hard time holding any type of continuing employment because of his bad temper. She did not have any personal knowledge of his employment since 1966. She was sure that he knew her exact location since she left him. She filed the instant charge after talking to the welfare authorities.

Peggy Moore, a case worker for the Department of Public Welfare, testified that Mrs. Bingham first applied for welfare in 1964. She was certified and received two months' payments. The records indicated that the payments were discontinued because Mr. and Mrs. Bingham were reunited. She reapplied for certification in September, 1969. The records of the department reflected her "legal" name to be Mrs. Bingham. The defendant did not testify, nor was any evidence offered in his behalf.

■ The first proposition asserts "that the conviction cannot be sustained where proof of a common law marriage has not been established in accordance with, and as provided by ruling Oklahoma Criminal Case law." It is well established that Title 21, O.S., § 853, applied to legitimate children only. Deo v. State, Okl.Cr., 272 P.2d 473 (1954). The question thus arises whether the State produced sufficient evidence to establish a common law marriage. We are of the opinion that the State did,

in fact, meet this burden. Title 21, O.S., § 854, provides in part:

"No other evidence shall be required to prove marriage of such husband and wife, or that such person is the lawful father or mother of such child or children than is or shall be required to prove such fact in a civil action, and such wife shall be a competent witness to testify in any case brought under this Act, and to any and all matters relevant thereto, including the fact of such marriage and the parentage of such child or children. * * *"

Gladys Bingham testified that they first entered into a common law marriage in September, 1960, that two children were born of this marriage, and that she lived with the defendant continuously until 1966, with the exception of one brief separation. Her testimony is corroborated in the testimony of the case worker, in that she represented herself as the defendant's wife and further, that she was paid benefits for two months in 1964, which payments were stopped when they were reunited. In Deo v. State, *supra*, we stated in the last syllabus:

"Where the sole issue upon which the appeal lies is whether or not there was a common law marriage, and where the State produces sufficient evidence to make out a prima facie case, in the absence of evidence in contradiction, the verdict and judgment appealed from must be affirmed."

We are of the opinion that the State established a prima facie case of common law marriage, and in the absence of evidence in contradiction, we find this proposition to be without merit.

■ The next proposition contends that the evidence does not show that the defendant willfully neglected and refused to maintain or provide for said minor child. This Court has previously held that the neglect and refusal to provide for a child must be willful, or negligent, and not a mere failure on account of inability. Rowden v. State, Okl.Cr., 397 P.2d 515 (1965).

The defendant argues that the State failed to prove the defendant's refusal was willful, in that the complaining witness did not have any personal knowledge of the defendant's employment history, where he had lived, or how many times he had been in jail during the four-year period after she had left him.

In the case of State v. McMains, 95 Okl.Cr. 176, 241 P.2d 976, we discussed the term "willful" where we stated:

"In St. John v. State, 22 Ala.App. 115, 113 So. 321, 323, the court said, as applied to this statute: '* * * the word "willful" is the synonym of "intentional," or "designed," pursuant to intention or design, without just (lawful) cause.

"It is true that this court has said in Ex parte George, 63 Okl.Cr. 115, 73 P.2d 471, 472, that 'Guilty intent may be presumed from neglect of duty, and the crime continues so long as the negligence does not cease.' But we have also said that 'Where one is on trial charged with an offense the commission of which requires a specific intent, the accused as a witness may rebut or explain his intent, and the exclusion of his testimony on this point is prejudicial error.' Smith v. State, 38 Okl.Cr. 416, 262 P. 507, and cases cited.

"Further, we approve the statement by the court in State v. Tucker, 151 Wash. 218, 275 P. 558; Uniform Laws, Ann. 1951, p. 39, where it is said: 'The presumption of wilfulness raised by proof of the abandonment or failure to support a child is rebuttable.' "

The question of whether or not the defendant had abandoned his child and did willfully neglect or refuse to maintain or provide for such child was a question to be decided by the jury. We stated in Ballard v. State, 92 Okl.Cr. 420, 223 P.2d 782:

"In prosecution of abandonment of minor child, elements of wilfulness or neglect may be gathered from all circumstances and conditions involved in the case."

We are of the opinion that the State once again established prima facie evidence of wilfulness, which question was properly submitted to the jury. The complaining witness testified that she saw the defendant several times during the four years of non-support, and that he was in good health, with the exception of one time, when he was in the hospital. She testified that he bought a welding truck, and was going to work on it. The defendant certainly had the right to introduce evidence to rebut, or explain, his inability to pay child support, which he chose to not do. We find this proposition to be without merit.

■ The final proposition asserts that the evidence absolutely and completely fails to establish an "abandonment" by defendant in relation to his wife and minor child. This assertion is based on the complaining witness's testimony that she left the defendant, and thus, he did not abandon her or the child. The complaining witness testified as follows:

"Well, he didn't leave, I left. We lost a little girl that died in April. Every time I turned around he was accusing me of killing her and I couldn't take it. He stayed drunk all the time. I mean he come in and used foul language and kicked us around and I left."

The general rule concerning this question is discussed in 42 C.J.S. Husband and Wife § 635 c, which states:

"Nevertheless, if a husband forces his wife to abandon him by his improper conduct or cruelty * * *, his conduct is legally an abandonment of her by him."

We are of the opinion that the defendant's actions were such to constitute an abandonment by him of the wife and child.

In conclusion, we observe that the Record is free of any error which would require reversal or justify modification. The judgment and sentence is accordingly affirmed.